OPINION
{¶ 1} Appellant, Chanel Reese, appeals the decision of the Portage County Court of Common Pleas granting summary judgment in favor of appellee, Six Flags, Inc. For the reasons that follow, we affirm the decision of the lower court.
 {¶ 2} In June of 2001, appellant purchased a season pass to Six Flags amusement park. In early July of 2001, appellant paid her first visit to the park using her pass. While waiting in line for a ride, appellant observed Six Flags employees channeling patrons who had not been in line onto the ride through the exit ramp. Upon inquiry, appellant learned that Six Flags had recently started a program called "Fast Lane."
 {¶ 3} At the time, Fast Lane tickets were sold at the main gate for $10 and, if purchased, would allow a patron to ride up to five rides (or one ride with five people or some similar permutation) without waiting in the typical lengthy line. Daniel Trausch, Director of Business Development at Six Flags, testified that Fast Lane ticket holders had an assigned time at which they could enter the rides of their choice. The Fast Lane ticket holders were metered in with the general population at their assigned time. If a patron missed the assigned time, he or she could not re-enter. Although the Fast Lane tickets were available to the public at large, Trausch admitted that the park did not aggressively market the program, i.e., the only advertisements were a large sign (which Six Flags was forced to remove due to a local "sign ordinance") and dissemination of pre-printed flyers describing the program. Trausch further noted that the park issued a limited amount of Fast Lane tickets per day; at the time of appellant's visit, Trausch testified that only five hundred Fast Lane tickets were sold per day.
 {¶ 4} Despite the above characterization, appellant contends that Six Flag employees "herded" Fast Lane ticket holders through exit ramps, without time reservations, announced their preferential treatment on loudspeakers, and placed them on rides "ahead of everyone else." As a result, appellant alleged that the Fast Lane program more than doubled her wait time at Six Flags' rides which, in her view, was frustrating and unreasonable.
 {¶ 5} After her July visit, appellant registered a verbal complaint with Six Flags regarding the frustration she was caused by what she perceived as the unfairness of the Fast Lane program. Appellant acknowledged, however, amusement parks frequently have long lines; appellant further recognized that, although she did not want to spend the extra $10, she had the ability to purchase Fast Lane tickets. Finally, appellant admitted that her season pass set forth certain terms and conditions which she failed to read. One relevant condition warned: "Due to ride maintenance and other circumstances, certain rides and attractions (including new rides) may not be open to the public. Rides subject to availability and/or height and weight restrictions."
 {¶ 6} Notwithstanding the above caveat, appellant testified that Six Flags should publicly disclose all of its programs before their implementation as this information may affect an individual's decision to purchase season passes. Appellant averred had she known about the Fast Lane program in advance, she would not have "wasted" her money on a season pass which had "no real value." However, despite her irritation and claimed resolution to "boycott" the park for the rest of the season, appellant returned to Six Flags in October of 2001.
 {¶ 7} Originally, the current matter was brought as a class action by Wanda J. Cochran (the wife of plaintiff's counsel), individually and on behalf of "all natural persons who purchased tickets of all types for admission into Six Flags' Worlds of Adventure Theme Park." The complaint sounded in breach of contract, conversion, breach of warranty, violations of the Ohio Consumer Sales Practices Act, fraudulent concealment, and negligence. Ms. Cochran filed an amended complaint adding three plaintiffs. Finally, plaintiffs filed a second amended complaint eliminating Ms. Cochran and Attorney Cochran from the purported class. Thereafter, plaintiffs Yonnica Scales and Jay Kapasi voluntarily dismissed their claims leaving appellant as the single plaintiff.
 {¶ 8} On December 30, 2002, Six Flags moved for summary judgment which the court granted on March 17, 2003. In its judgment entry, the court determined that appellant failed to demonstrate a genuine issue of material fact on all counts. Appellant now appeals.
 {¶ 9} In her sole assignment of error, appellant makes the general claim that the trial court erred in granting summary judgment in Six Flags' favor. We review the trial court's granting of summary judgment de novo. Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, at ¶ 13. Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: (1) there are no genuine issues of material fact remaining; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence in a light most favorable to the non-moving party, that conclusion favors the movant. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
 {¶ 10} A party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial.Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330. During the summary judgment exercise, any doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358. However, we bear in mind that the construction of a written contract is a matter of law to be determined by the trial court. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. Where a contract is clear and unambiguous, its interpretation may properly be subject to summary judgment. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322.
 {¶ 11} Appellant first contends that the lower court erred in granting summary judgment because reasonable minds could conclude that Six Flags' denial of reasonable access to major ride attractions was a material breach of the contract under review.
 {¶ 12} Appellant notes, and we agree, that her purchase of the season pass constituted a binding contract with Six Flags. However, appellant contends that the language on her season pass was incomplete. Appellant concludes that the terms cannot be determined from the four corners of the contract and thus its interpretation involves material issues of fact requiring submission to a jury. See, Aultman Hosp. Assn. v. Community Mut.Ins. Co. (1989), 46 Ohio St.3d 51, 53-54.
 {¶ 13} The terms and conditions on appellant's voucher read, in relevant part:
 {¶ 14} "* * *
 {¶ 15} "Present your I.D. each time you visit the park. Additional I.D. may be required. Children should be accompanied by parent or guardian. Park capacity and other circumstances may cause Six Flags to limit entry. Your season pass may be used only once each day. If you leave the park and plan to re-enter the same day, you must have your hand stamped at the exit gate. Your season pass is good for all rides and attractions except games, arcades and certain rides and attractions which may require additional charges. Admission to certain special events may require an additional charge and may have limited capacity. This season pass is not valid for private parties. Due to ride maintenance and other circumstances, certain rides and attractions (including new rides) may not be open to the public. Rides subject to availability and/or height and weight restrictions.
 {¶ 16} "* * *"
 {¶ 17} An agreement is integrated when the parties adopt the writing as the full and final expression of their agreement. See,Camargo Cadillac Co. v. Garfield Enterprises, Inc. (1982),3 Ohio App.3d 435, 438. Therefore, where the parties to a contract have agreed to it as an integration, extrinsic or parol evidence is not admissible to supplement or vary its terms. Trinova Corp.v. Pilkington Bros. P.L.C. (1994), 70 Ohio St.3d 271, syllabus.
 {¶ 18} Here, appellant provides no argument to support her claim that the voucher, along with its terms and conditions, did not represent an integrated writing. Further, there are no indefinite propositions or additional offers within the "terms and conditions" that might suggest the agreement was not integrated. Appellant admits that she failed to read the terms and conditions in its entirety; however, her omission does not render the agreement incomplete. In fact:
 {¶ 19} "[o]ne of the most celebrated tenets of the law of contracts is that a document should be read before being signed and the corollary to this rule is that a party to the contract is presumed to have read what he signed and cannot defeat the contract by claiming he did not read it." Hadden Co. L.P.A. v.Del Spina, 10th Dist. No. 03AP-37, 2003-Ohio-4507, at ¶ 15.
 {¶ 20} Although appellant signed no document, she purchased the pass upon which the terms and conditions were printed. The pass entitles appellant admission to the park, but no additional promises appear within the writing. In fact, Six Flags stipulates various reasons why, despite one's status as a season pass holder, he or she may not be able to board certain rides, e.g., due to maintenance, availability, or other circumstances. Appellant was obligated to read these "terms and conditions" as they represented appellant's rights and the limitations of those rights as a season pass holder. However, her failure to so read the document summarizing the nature of her agreement does not render the agreement incomplete.
 {¶ 21} Next, appellant claims that the contract included ambiguous language which can only be understood through recourse to extrinsic evidence. Specifically, appellant argues that the terms "good" and "availability" within the "terms and conditions" are ambiguous thereby generating material issues of fact which should be left to the jury. We disagree.
 {¶ 22} Although the "terms and conditions" of appellant's season pass are not the archetype of artful drafting, the language employed is internally coherent and unequivocal. The "terms and conditions" provide: "Your season pass is good for all rides and attractions except * * *." (Emphasis sic). In the abstract, the term good has no obvious referent and, in fact, may be "indefinable." However, under the circumstances, the term has a context, i.e., it implies that the pass will be suitable or adequate for admission on all rides and attractions subject to certain exceptions.
 {¶ 23} Moreover, the "terms and conditions" state that "[r]ides are subject to availability * * *." Although there may be many reasons why rides may be unavailable on a particular day, the term "availability" is not ambiguous on its face. Plainly, if a ride is "available" it is ready for immediate use. The "terms and conditions" simply state that certain conditions may arise making immediate use impossible. Thus, we find no ambiguity in the "terms and conditions" of Six Flags' season pass.
 {¶ 24} However, appellant contends that the season pass, when read in its entirety and in conjunction with Six Flags' advertising campaign, suggests she, as a season pass holder, was entitled to "reasonable access" to rides. As "reasonable access" is a factual question, appellant alleges, the court erred in granting summary judgment. Again, we disagree.
 {¶ 25} We cannot glean an assurance of "reasonable access" to rides from the language of the "terms and conditions" set forth in appellant's season pass. Further, appellant fails to provide any supportive evidence regarding Six Flags season pass advertising campaign. Appellant merely asserts that Six Flags' "advertising campaign stressed the advantages of owning a season pass to maximize enjoyment of certain rides." From this conclusion, appellant infers she was entitled to "reasonable access." Appellant provides no evidence of the advertisements in question; moreover, appellant fails to provide any cogent evidence supporting her conclusion that the advertisements somehow promised "reasonable access." Without any independent evidence on which appellant might support her claims, her contentions are hollow and conclusory.
 {¶ 26} In sum, we hold that the "terms and conditions" represent a full and final expression of the parties' agreement. Moreover, we find no patent or latent ambiguities in the language of the "terms and conditions." Appellant is bound by the terms and conditions as they are written. Six Flags made no assurances that appellant, as a season pass holder, was entitled to "reasonable access" to rides;[1] rather, as a season pass holder, appellant was entitled to admission into the park (subject to certain stipulated exceptions). Because appellant has set forth no evidence creating a genuine issue of material fact, the lower court did not err in granting summary judgment on appellant's breach of contract claim.
 {¶ 27} Next, appellant argues that the lower court erred in granting summary judgment as reasonable minds could conclude that Six Flags' introduction of the Fast Lane program violated the implied covenant to perform its contract in good faith. Appellant's argument is without merit.
 {¶ 28} Appellant argues that implementing the Fast Lane program violated Six Flags' duty of good faith because it made "reasonable access" to rides impossible. Appellant's position is clearly premised upon her erroneous claim that Six Flags was required to provide "reasonable access" to rides. As indicated in the preceding analysis, there is no evidence indicating that Six Flags promised "reasonable access" to rides. A duty of good faith does not attach to a non-existent contract. Further, Six Flags can neither logically nor legally breach a promise it never made.[2] Thus, appellant's argument is overruled.
 {¶ 29} Finally, appellant argues that Six Flags committed an unfair or deceptive consumer sales practice under R.C. 1345.02 by representing that its season pass would be "good" for all rides in the park.
 {¶ 30} It is unclear how Six Flags' use of the word "good" was deceptive. As stated above, the term "good," in the context of the season pass' "terms and conditions" suggests that a valid pass is sufficient for admission on all rides or attractions, subject to certain exceptions. There are no built in promises guaranteeing a pass holder special treatment regarding ride access. Hence, appellant's argument is again premised upon the alleged representation that Six Flags would provide reasonable access to rides. We reiterate, appellant has provided no evidence, absent her own self-serving statements, indicating Six Flags made such a representation. As we find no evidence of any such representation, Six Flags did not engage in any deceptive practices. Thus, appellant's argument is without merit.
 {¶ 31} For the foregoing reasons, appellant's sole assignment of error is without merit. Therefore, the decision of the Portage County Court of Common Pleas is hereby affirmed.
Ford, P.J., Grendell, J., concur.
[1] In its judgment entry, the trial court stated: "Plaintiff argues that Six Flags breached a material term of Plaintiff's season pass by denying her `reasonable access' to the Park's major attractions. However, the terms and conditions Plaintiff's season pass expressly provide that rides are subject to availability. Theme parks are commonly known to have notoriously long waits for new attractions. This is part of going to a theme park and Six Flags did not promise otherwise. Six Flags did not include as a term of its season pass that lines would not be long at times, especially lines for the newest attractions, and this Court cannot read such a term into Plaintiff's season pass. Therefore Plaintiff's breach of contract claim fails as a matter of law." We agree with the trial court's succinct reasoning.
[2] In its brief, Six Flags suggests that the duty of good faith applies strictly to contracts involving goods. We disagree with this blanket assessment. Other courts have held that parties to any contract are bound toward one another by standards of good faith and fair dealing. Waseon Plaza Ltd. Partnership v.Waseon Hardware Co., 156 Ohio App.3d 575, 2004-Ohio-1661, ¶ 54, citing Bolling v. Clevepak Corp. (1984), 20 Ohio App.3d 113. However, this point does not affect our disposition of appellant's claim.