**DRAKE CONSTRUCTION COMPANY, Appellant,**

v.

**KEMPER HOUSE MENTOR, INC., Appellee.**

[Cite as *Drake Constr. Co. v. Kemper House Mentor, Inc.*, 170 Ohio App.3d 19, 2007-Ohio-120.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2005–L–157.

Decided Jan. 12, 2007.

Nicola, Gudbranson & Cooper, L.L.C., and Timothy L. McGarry, for appellant.

Powers & Groh–Wargo and Frank J. Groh–Wargo, for appellee.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Drake Construction Company appeals from the summary judgment granted Kemper House Mentor, Inc. by the Lake County Court of Common Pleas. We reverse and remand.

{¶ 2} Drake is a general contractor in the construction industry. In July 2000, Drake entered into a contract with Kemper to build an assisted-living facility in Mentor, Ohio. This contract (the "primary contract") was a U.S. Department of Housing and Urban Development ("HUD") form, HUD–92442–A, which is a cost-plus contract. HUD insured the building loan. The HUD form specified that the contract documents included the drawings and specifications, including the then current edition of AIA ("American Institute of Architects") Document A201, "General Conditions of the Contract for Construction," and Form HUD–2554, "Supplementary Conditions of the Contract for Construction." The HUD form provided that any provisions therein, or in the supplementary conditions, took precedence over inconsistent provisions in the AIA general conditions. It further provided that any changes in the drawings and specifications, terms of the contract, orders for extra work, or for alterations could be made only with the prior written approval of the Federal Housing Commissioner and Kemper's lender, Banc One Capital Funding Corporation.

{¶ 3} Pursuant to the AIA general conditions, changes in the work under the primary contract could be accomplished by three methods: change order; construction change directive; or order for a minor change. A change order had to be in writing and signed by the architect, Kemper, and Drake. A change directive required only the agreement of the architect and Kemper. An order for a minor change could issue solely on the architect's authority and was binding on both Kemper and Drake. Change directives and orders for minor changes also had to be in writing. The general conditions also provided that acceptance of final payment by Drake constituted a waiver of claims, except those previously made in writing and identified as unsettled at the time of final payment.

{¶ 4} The total amount to which Drake was entitled for work under the primary contract was limited to $3,761,299.

{¶ 5} In return for its assistance, HUD evidently required certain changes or improvements outside the scope of the primary contract. To provide for these, Drake and Kemper entered into an "Off–Site Construction Contract" (the "secondary contract") in May 2000.. No HUD or AIA documents were referenced or incorporated in the secondary contract. The work under the secondary contract was to be completed by May 2001. Kemper agreed to pay Drake $112,790 under the secondary contract. The secondary contract contained no provision requiring change orders to be in writing.

{¶ 6} Drake claims that it quickly became apparent that there would be cost overruns. It alleges that there were deficiencies in the drawings provided by the architect and that the access road to the construction site had to be altered at great expense. It also claims that problems with the utilities caused cost overruns. Drake states that it discussed these problems with Kemper. Evidently, there are procedures whereby HUD's approval can be obtained to cover such overruns, but Drake claims that Kemper promised to pay these expenses itself, to avoid the cumbersome HUD procedures.

{¶ 7} Drake sent monthly summaries of the alleged changes and cost overruns to a Doug Moltz, who had been retained by Kemper as project manager. These summaries contained a column containing descriptions of each proposed or completed change; a column entitled "Proposed Change," evidently containing the cost for the change; a column entitled "Status," often containing notations such as "Approved" or "Rejected"; a column entitled "Total Pending," evidently showing the amount of monies expected by Drake for the particular item; a column entitled "Total Appr'd," containing monetary figures; and a column entitled "Owner/Arch." This last column rarely, if ever, contains any notation.

{¶ 8} In July 2002, Drake submitted a contractor's requisition for the 14th and final HUD disbursement under the primary contract, in the amount of $225,763. This brought total payments to it under the primary contract to $3,761,299.

{¶ 9} In August, representatives of Drake, Kemper, and the architect attended a so-called "100% Draw Meeting," evidently following a site inspection by HUD. A memorandum of this meeting signed by the HUD representatives indicates that there were no change orders under the primary contract.

{¶ 10} In the autumn of 2002, Drake submitted to Kemper a "contractor's certificate of actual cost," showing that Drake was owed $120,729.52 for cost overruns relating to the Mentor facility.

{¶ 11} Drake alleges that Kemper requested it to defer final payment for these overruns while Kemper pursued claims against the utilities contractor and the architect for the Mentor facility. Drake alleges that it provided Kemper with information in support of these claims.

{¶ 12} Thereafter, Kemper refused to pay Drake any additional monies. On June 7, 2004, Drake filed the initial complaint in this action, alleging breach of contract relative to the primary contract and unjust enrichment. On August 9, 2004, Kemper filed a motion to dismiss or, alternatively, for summary judgment. Attached thereto was the affidavit of Betty Kemper, president of Kemper, stating affirmatively that Drake had been paid in full under the primary contract. Attached to this affidavit were the contract documents; the contractor's requisition from July 2002 showing Drake's application for the final disbursement from the HUD loan; and the HUD memorandum of the "100% Draw Meeting" from August 2002.

{¶ 13} On August 20, 2004, the trial court converted Kemper's motion to dismiss to a motion for summary judgment. On September 14, 2004, Drake filed a motion to amend its complaint and a brief in opposition to Kemper's motion. Alternatively to opposing the summary judgment motion, Kemper requested that the trial court deny that motion pursuant to Civ.R. 56(F). Attached to the brief in opposition was the affidavit of James Pinter, vice president and controller of Drake. Pinter alleged at paragraph 14 of this affidavit that if Betty Kemper or Doug Moltz were called to testify, they would admit "that the costs for the project exceeded the maximum amount set forth in the Primary Contract and that Kemper would be responsible to pay those amounts to Drake." Attached to Pinter's affidavit were several summaries of increased costs prepared by Moltz. That document, dated March 6, 2002, listed some 18 changes as "Owner requested and approved" totaling $31,477 in cost, as well as three items under "Owner responsibility" totaling $13,810.

{¶ 14} On September 20, 2004, Kemper filed its opposition to Drake's motion to amend the complaint, as well as its reply brief in the summary judgment proceedings. Attached to the reply brief was a second affidavit by Betty Kemper, affirmatively stating that Drake had been paid the entire sum owed under the secondary contract.

{¶ 15} By a journal entry filed October 28, 2004, the trial court granted Drake leave to file its amended complaint by November 10, 2004. Drake did not file the amendment until December 20, 2004. Under its amended complaint, Drake alleged three causes of action. First, it alleged breach of either the primary or the secondary contract through Kemper's failure to pay for the cost overruns on the Mentor facility. Second, it alleged breach of an oral contract between the parties, whereby Kemper agreed to pay for the cost overruns. Third, Drake alleged that Kemper had been unjustly enriched.

{¶ 16} In response to the amended complaint, Kemper filed an answer and renewed its summary judgment motion. Evidently, the parties exchanged written discovery. April 28, 2005, Drake attempted to subpoena Moltz for a witness

deposition for May 17, 2005, and requested the deposition of Betty Kemper for May 11. On May 6, 2005, Kemper moved the trial court to stay discovery pending a ruling on its summary judgment motion. Drake opposed the motion to stay and renewed its Civ.R. 56(F) motion. Finally, on August 15, 2005, Drake perfected service of its subpoena on Moltz, setting a deposition date of August 29, 2005. However, on August 25, 2005, the trial court, in a detailed, closely-reasoned opinion, granted Kemper summary judgment on each count in the amended complaint.

{¶ 17} On September 22, 2005, Drake timely filed its notice of appeal. It makes the following assignments of error:

{¶ 18} "[1.] The trial court incorrectly granted summary judgment to defendant/appellee without ruling upon plaintiff/appellant's request for a continuance pursuant to Civil Rule 56(F) (T.d. 24).

{¶ 19} "[2.] The trial court incorrectly granted summary judgment to defendant/appellee as to all of plaintiff/appellant's claims (T.d. 24)."

{¶ 20} In order for a summary judgment to be granted, the moving party must prove:

{¶ 21} "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 22} The Ohio Supreme Court stated the following in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264:

{¶ 23} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis sic.)

{¶ 24} Appellate courts review a trial court's grant of summary judgment de novo. *Johnson v. Auto–Owners Ins. Co.*, 11th Dist. Nos. 2002–L–123 and 2002–L–131, 2005-Ohio-237, 2005 WL 124078, at ¶ 12; *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. *Brown* stated, "[W]e review the judgment independently and without deference to the trial court's determination." Id. at 711, 622 N.E.2d 1153. An appellate court must evaluate

the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140. A motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id. Further, a trial court's decision to grant or deny a delay pursuant to Civ.R. 56(F) will be reversed only for abuse of discretion. Cf. *King v. Zell* (Dec. 31, 1998), 11th Dist. No. 97–T–0186, 1998 WL 964541, at *3–4.

{¶ 25} The construction of written instruments is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph one of the syllabus. Thus, insofar as this case involves written contracts, we review de novo the construction made by the trial court. When a contract is clear and unambiguous, its interpretation is properly subject to summary judgment. *Scales v. Six Flags, Inc.*, 11th Dist. No. 2003–P–0043, 2004-Ohio-4385, 2004 WL 1870499, at ¶ 10.

{¶ 26} By its first assignment of error, Drake argues that the trial court improperly granted summary judgment to Kemper before Drake had the opportunity to depose Doug Moltz and Betty Kemper. When a party opposing a summary judgment motion needs further evidence to sustain its case, the proper remedy is to move the trial court to delay judgment pursuant to Civ.R. 56(F). *Alexander v. Tullis*, 11th Dist. No. 2005–P–0031, 2006-Ohio-1454, 2006 WL 763088, at ¶ 22. Drake contends that the allegation contained in paragraph 14 of the Pinter affidavit—that the testimony of Moltz and Kemper would show that Kemper had promised to pay for overrun costs—was sufficient to support a Civ.R. 56(F) motion.

{¶ 27} Civ.R. 56(F) provides:

{¶ 28} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

{¶ 29} Under Civ.R. 56(F), "[a] party who seeks a continuance for further discovery is not required to specify what facts he hopes to discover, especially where the facts are in the control of the party moving for summary judgment." *Doriott v. MVHE, Inc.*, 2nd Dist. No. 20040, 2004-Ohio-867, at ¶ 41. "However, the court must be convinced that there is a likelihood of discovering some such facts." Id. Lack of diligence in pursuing discovery by the party moving under Civ.R. 56(F) militates against grant of a delay. Id. Generally, however, the trial court should exercise its discretion in favor of a party seeking further time for discovery under Civ.R. 56(F). *Zell*, 11th Dist. No. 97–T–0186, 1998 WL 964541, at *3.

{¶ 30} In this case, Drake moved the trial court, pursuant to Civ.R. 56(F), to deny or delay ruling on Kemper's summary judgment motion, pending deposition of Kemper and Moltz, as an alternative to complete denial of the summary judgment motion. The Civ.R. 56(F) motion was made as part of Drake's brief in opposition. We think a separate motion addressed to the issue, rather than a motion buried in a brief, would have been better procedurally, as it is difficult to ask our overburdened trial courts to scour the files for pleadings. Nevertheless, Drake sufficiently raised the matter. Further, through the agency of Pinter's affidavit, Drake went beyond its Civ.R. 56(F) burden, by specifying the facts it believed such discovery would elicit: admissions by Kemper and Moltz that Kemper knew about the cost overruns alleged and that Kemper was responsible for their payment.

{¶ 31} Drake could have been more diligent in pursuing the depositions of Kemper, a party, and Moltz, a nonparty, which tells against it. Drake's brief in opposition was filed September 14, 2004; it did not seek the deposition of Moltz until April 2005, or that of Kemper until May 2005. However, as soon as Drake did seek these depositions, Kemper moved for a stay of discovery; it took until August 15, 2005—ten days before the grant of summary judgment to Kemper— for service of the deposition subpoena to be achieved on Moltz.

{¶ 32} The trial court never ruled on Drake's Civ.R. 56(F) motion and therefore denied it. *Zell*, 11th Dist. No. 97–T–0186, 1998 WL 964541, at *4. We conclude that this implicit denial resulted in substantial injustice to Drake, requiring us to reverse the trial court's judgment. Id. In particular, the record seems to indicate that Moltz may be able to specify which alleged cost overruns related to which contract and that Kemper could clarify what understanding, if any, existed between the parties concerning such overruns. We reach this conclusion reluctantly, particularly in view of the opinion issued by the trial court in this matter, which is a model of reasoning and scholarship.

{¶ 33} The first assignment of error has merit.

{¶ 34} In view of our disposition of the first assignment of error, we decline to reach the second, as it is not yet ripe for review.

{¶ 35} The judgment of the Lake County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

O'NEILL, J., concurs.

GRENDELL, J., dissents.