[Cite as *Megalight, Inc. v. Reliable Final Mile Transport, L.L.C.*, 2025-Ohio-841.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MEGALIGHT, INC.,                          :

    Plaintiff-Appellee,          :

                        No. 114441

v.                                        :

RELIABLE FINAL MILE
TRANSPORT, L.L.C.,                         :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-990786

---

### *Appearances:*

Gertz & Rosen, Ltd., and Colin G. Skinner, *for appellee.*

Gordon Rees Scully Mansukhani, LLP, David A. Campbell, and Donald G. Slezak, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Reliable Final Mile Transport, L.L.C. ("Reliable") appeals an order granting summary judgment in favor of plaintiff-appellee, Megalight, Inc. ("Megalight") and claims the following errors:

1. The trial court erred when it granted summary judgment on liability in favor of appellee Megalight, Inc ("Appellee") because genuine issues of material fact existed for trial.

2. The trial court erred when it granted summary judgment on damages in favor of Appellee because genuine issues of material fact existed for trial.

3. The trial court erred by considering an affidavit that was made in bad faith and violated Rule 56(G) of the Ohio Rules of Civil Procedure.

4. The trial court erred when it denied Appellant Reliable Final Mile Transport, L.L.C.'s ("Appellant") Rule 56(F) Motion seeking to conduct discovery relevant to the motion for summary judgment.

5. The trial court abused its discretion by denying the joint motion of Appellant and Appellee to conduct discovery relevant to the summary judgment ruling.

6. The trial court abused its discretion by denying Appellant the right to file a motion for summary judgment pursuant to Rule 56 of the Ohio Rules of Civil Procedure.

{¶ 2} We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

## I. Facts and Procedural History

{¶ 3} This lawsuit arises from a warehouse storage agreement between Reliable and Megalight. Megalight imports and sells low-energy light bulbs and equipment. Reliable operates a storage warehouse in Brooklyn, Ohio. In September 2022, Megalight contracted with Reliable for the storage and handling of light bulbs and other inventory. Reliable initially charged a fee for each pallet of materials moving in and out of the warehouse each month. Reliable also charged for the number of pallets stored and for services such as palletizing materials that were

"floor-Loaded" or shipped in a container without pallets. A copy of the parties' initial agreement is attached to the complaint as exhibit A.

{¶ 4} Pursuant to the parties' initial agreement, Reliable billed Megalight each month for the prior month's storage together with an itemization of services provided from the prior month. Billing was made in arrears, payable 30 days from receipt. The parties' relationship continued with this initial arrangement for several months without incident. The parties' relationship began to deteriorate in the spring of 2023, when Reliable allegedly doubled its pricing without notice.

{¶ 5} Beginning March 1, 2023, Reliable increased prices for storage and moving pallets inbound and outbound. The original agreement listed a monthly storage fee of $3.00 per pallet, and beginning March 1, 2023, the monthly storage fee increased to $6.00 per pallet. The original agreement listed the price for moving pallets inbound and outbound at $6.00 per pallet. Beginning March 1, 2023, the price for inbound and outbound pallets increased to $12.00 per pallet. Although the notice, attached to the complaint as exhibit C, indicates the price increases were effective March 1, 2023, the notice itself is not dated. It is, therefore, unclear when this notice was provided to Megalight. In any event, Megalight agreed to the price increases, and monthly billing continued in arrears. (Plaintiff's motion for summary judgment p. 3.)

{¶ 6} In August 2023, Megalight sent an email to Reliable informing it of a personnel change and asking it to direct its invoices to a new person. Megalight claims it did not receive an invoice for June services in July. Instead, it received the

July invoice for June fees in August. The invoice was allegedly sent to the wrong email address and was discovered in September 2023. On August 31, 2023, Megalight informed Reliable that it had not received an invoice for July 2023. The bill for July fees would have normally been sent to Megalight in August. On September 1, 2023, Reliable sent Megalight a revised invoice showing an amount due of $4,918, but the itemization of charges sent with the invoice did not match the invoice itself. Megalight claims Reliable doubled the amount of the July invoice after its issuance. (Complaint exhibits D and F.) Megalight inquired about the discrepancy, and Reliable sent a revised pallet count to Megalight related to the invoice.

{¶ 7} In September 2023, Reliable notified Megalight that there were several outstanding unpaid invoices. Megalight claimed it never received the invoices. According to Megalight, Reliable also sent invoices that were not yet due and the detailed charges accompanying the invoices did not match the invoices themselves. Megalight further alleged that Reliable refused to allow Megalight access to its inventory until its outstanding bills were paid. Megalight paid the bills, and business resumed. (Jiang aff. ¶ 15.)

{¶ 8} In October 2023, Reliable changed its billing practices to require Megalight to pay a fixed monthly fee of $4,000 per month for storage and services. Reliable also switched from billing in arrears to billing in advance. On October 31, 2023, Reliable issued a November invoice in the amount of $4,000 due November 1, 2023. Megalight objected to the new billing practices, claiming it never agreed to

advanced, fixed-fee billing.  When Megalight had not paid the November invoice by November 13, 2023, Reliable refused to provide Megalight access to its inventory.

{¶ 9} On November 14, 2023, Dillon Jiang ("Jiang"), Megalight's president, wrote to Gary Habeeb ("Habeeb"), Reliable's "Chief Experience Officer," and advised him that Megalight had not agreed to the new billing terms.  Jiang also objected to the increases in price, which Megalight claims were made without notice. On November 15, 2023, Megalight sent an email to Reliable stating its objection to the price increases but indicating it would pay the invoices in order to regain access to its inventory.

{¶ 10} Megalight claimed that it had 402 pallets stored in Reliable's warehouse at the end of October 2023.  After paying the November invoice for $4,000, Megalight removed 130 pallets from the warehouse.  However, the parties continued to dispute the monthly storage and warehouse fees as well as the amount of Megalight's inventory.  According to Megalight, Reliable again increased the monthly warehouse fee, without notice, to $5,000 per month in December 2023. Megalight alleges that Reliable also added additional sums for November warehouse services even though Reliable had indicated that it would complete the services for a fixed fee.  Thus, the December bill indicated a monthly fee of $5,000 plus additional charges for a total bill of $7,000.  (Jiang aff. ¶ 21, complaint exhibit K.) Megalight claims that Reliable refused to allow Megalight access to its inventory until the December bill was paid in full.

{¶ 11} While allegedly refusing to allow Megalight access to its inventory, Reliable sent past due notices on December 4, 5, and 6, and threated legal action if the December 1, 2023 invoice remained unpaid. On December 6, 2023, Habeeb sent a letter to Megalight stating, in relevant part:

> It's real simple, you are on a month to month agreement. In the warehouse business, there isn't terms for payment. Just like a storage unit or apartment, it's due on the 1st. Since you repeatedly continue to not follow our warehousing terms and haven't paid, we are now switching to Market Rate Terms. That's weekly and your new rate is $2500/wk until you are paid current or vacate. If you choose to leave, you will be required to pay in full prior to gaining access.

(Jiang aff., exhibit A-7.)

{¶ 12} In January 2024, Megalight filed a complaint against Reliable, asserting claims for breach of contract, unjust enrichment, and for a declaratory judgment declaring the rights of the parties, including Megalight's right to its inventory. Megalight alleged, among other things, that Reliable unilaterally increased the warehouse storage fee multiple times without Megalight's consent and refused to allow Megalight access to its inventory until the increased fees were paid in full.

{¶ 13} Reliable filed an answer and counterclaim. In the counterclaim, Reliable alleged that Megalight owed $18,000 for warehouse services and that if Megalight failed to pay the amounts owed, Reliable would sell Megalight's inventory to satisfy its debt. The counterclaim presented claims for breach of contract and unjust enrichment.

**{¶ 14}** In May 2024, Reliable filed a notice of warehouse lien sale pursuant to R.C. 1307.209. The notice advised the court that a public sale of Megalight's inventory had been scheduled to satisfy Megalight's debt. The trial court enjoined the sale while the case was pending.

**{¶ 15}** The trial court granted Megalight leave to file a motion for summary judgment but did not grant leave to Reliable to file one. Reliable nevertheless filed a motion for summary judgment by Megalight's summary-judgment deadline, but the trial court struck it on grounds that leave had not been given.

**{¶ 16}** Megalight filed a motion for summary judgment supported by a single affidavit from Jiang, Megalight's president. Reliable filed a brief in opposition to the motion for summary judgment and supported the brief with a single affidavit from Habeeb, Reliable's "Chief Experience Officer." Meanwhile, the parties filed a joint motion for continuance of the trial date and other dates in the court's case-management order in order to permit depositions of fact witnesses. The trial court denied the motion for continuance and for discovery without explanation.

**{¶ 17}** The trial court granted summary judgment in favor of Megalight. The court's order dismissed Reliable's counterclaim with prejudice and granted Megalight an immediate order of possession and access to its inventory. It also awarded monetary damages to Megalight in the amount of $359,462.76, plus interest at the statutory rate. Reliable now appeals the trial court's judgment.

## II. Law and Analysis

### A. Summary Judgment

{¶ 18} In the first assignment of error, Reliable argues the trial court erred in granting summary judgment in favor of Megalight on the issue of liability. In the second assignment of error, Reliable argues the trial court erred awarding damages to Megalight when it granted its motion for summary judgment. Reliable contends there are genuine issues of material fact that preclude an order granting summary judgment in favor of Megalight on the issues of both liability and damages. We discuss these assigned errors together because they are interrelated.

### 1. Standard of Review

{¶ 19} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, the party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367 (1998).

{¶ 20} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon

the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

## 2. Warehouse Lien

{¶ 21} Reliable argues that because it is undisputed that it (Reliable) operates a warehouse and that Megalight contracted with Reliable to store its inventory in Reliable's warehouse, Reliable is automatically entitled to a warehouse lien on Megalight's inventory pursuant to R.C. 1307.209. R.C. 1307.209(A) provides, in relevant part:

> A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. . . .

Thus, under R.C. 1307.209(A), a warehouse acquires a lien on goods covered by a storage agreement. And R.C. 1307.210 provides a warehouse with a right to collect on the lien through a public sale of the bailor's goods. However, R.C. 1307.209(E) provides that "[a] warehouse loses its lien on any goods that it voluntarily delivers or *unjustifiably refuses to deliver*." (Emphasis added.)

{¶ 22} Based on the conflicting statements in Jiang and Habeeb's affidavits, we find there are genuine issues of material fact as to whether Reliable unjustifiably refused to deliver Megalight's inventory to Megalight. It is undisputed that Reliable

initially charged Megalight a fee for each pallet of materials moved in and out of the warehouse each month, a fee for the number of pallets stored each month, and a fee for services such as palletizing materials that were "floor-Loaded" or shipped in containers without pallets. (Jiang aff. ¶ 5.) Reliable billed Megalight a storage fee each month together with an itemization of services rendered the prior month. (Jiang aff. ¶ 6.) There were no disputes between the parties for the first several months of the parties' relationship.

{¶ 23} However, Megalight contends that beginning March 1, 2023, Reliable unilaterally doubled its pricing without notice. The parties' initial agreement, attached to the complaint as exhibit A, only provides price terms. It does not guarantee the prices for any stated period of time. Thus, the original agreement is a month-to-month tenancy. R.C. 1307.206(A) provides:

> A warehouse, by giving notice to the person on whose account the goods are held and any other person known to claim an interest in the goods, may require payment of any charges and removal of the goods from the warehouse at the termination of the period of storage fixed by the document of title or, *if a period is not fixed, within a stated period not less than thirty days after the warehouse gives notice.* If the goods are not removed before the date specified in the notice, the warehouse may sell them pursuant to section 1307.210 of the Revised Code.

(Emphasis added.) The notice advising of increased pricing effective March 1, 2023, is not dated. Therefore, it is unclear whether Megalight had 30-day notice of the increase.

{¶ 24} There was also confusion regarding Megalight's bills because Megalight asked Reliable in August 2023 to send invoices to a new point person, and

Megalight alleges it did not receive the invoices. Thereafter, Reliable sent Megalight notice that it had past-due invoices, which Megalight claims it never received, and Reliable refused to give Megalight access to its inventory until the invoices were paid. When Megalight later received invoices in October 2023, it found that the amounts listed in the invoices did not match the detailed itemization of the charges. Megalight asserts that it paid the overdue invoices in order to regain access to its inventory, but it reserved the right to dispute them. According to Megalight, Reliable then unilaterally changed its billing practices, again without notice, to require Megalight to pay a fixed fee of $4,000 at the beginning of each month. (Jiang aff. ¶ 16-18.)

{¶ 25} Finally, Megalight claims it brought trucks to Reliable's warehouse on December 1, 2023, to remove its inventory, but Reliable prevented it from doing so. Reliable, however, maintains Megalight did not bring enough trucks to remove all of its inventory and that Megalight's failure to remove its inventory caused the accrual of additional fees. There are, therefore, genuine issues of material fact regarding whether Reliable unjustifiably refused to allow Megalight to remove its inventory from Reliable's warehouse. There are also genuine issues of material fact concerning the applicable contract terms since it is not clear when Megalight received notice of the price changes. Without resolution of these issues, the trial court could not properly determine if either party breached the contract, whether Reliable tortiously converted Meglight's property for its own use, or whether Reliable was unjustly enriched.

{¶ 26} There are also genuine issues of material fact related to each party's claim for damages. According to Habeeb's affidavit, Megalight owed warehouse fees totaling $70,000. (Habeeb aff. ¶ 6.) Megalight disputes the amounts of Reliable's invoices. And Megalight contends that Reliable misappropriated 82 pallets of inventory worth $310,261.76. Reliable denies misappropriating any of Megalight's inventory. Megalight also claims that Reliable's unjustifiable refusal to grant Megalight access to its inventory caused Megalight to sustain losses of $27,844 as a result of having to find alternate sources for the inventory in Reliable's warehouse. Reliable maintains it had the right to withhold access to Megalight's inventory and to sell Megalight's inventory because Megalight breached the parties' contract by failing to pay the invoices. There are, therefore, genuine issues of material fact as to whether there are any of Megalight's pallets missing from Reliable's warehouse and whether either party is entitled to damages and, if so, the amount of the damages.

{¶ 27} The trial court erred in granting summary judgment in favor of Megalight on liability and damages. Therefore, the first and second assignments of error are sustained.

## B. Discovery

{¶ 28} In the third assignment of error, Reliable argues the trial court erred in considering Jiang's affidavit. Reliable contends that Jiang's affidavit was made in bad faith and violated Civ.R. 56(G) because it contains false statements. In the fourth assignment of error, Reliable argues the trial court erred in denying Reliable's Civ.R. 56(F) motion to take the depositions needed to establish the terms of the

parties' contract, and to verify the amount of legitimate, unpaid invoices. In the fifth assignment of error, Reliable argues the trial court erred in denying the parties' joint motion to conduct discovery relevant to the issues presented in the motion for summary judgment. We discuss these assigned errors because they are interrelated.

{¶ 29} Civ.R. 56(F) provides:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

Civ.R. 56(F) is a tool to be used when the nonmoving party is unable, for some valid reason, to compose an affidavit to justify the denial of summary judgment. *Ramos v. Khawli*, 2009-Ohio-798, ¶ 41 (7th Dist.), citing Civ.R. 56(F). Civ.R. 56(F) requires the party opposing a motion for summary judgment to submit affidavits to the court explaining its reasons as to why it cannot submit an affidavit with facts justifying opposition to the motion. *Gurary v. John Carroll Univ.*, 2024-Ohio-3114, ¶ 27 (8th Dist.), quoting *Gates Mills Invest. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-169 (8th Dist. 1978).

{¶ 30} A trial court has discretion to control its own docket and to decide its discovery schedule. *Wooten v. Westfield Ins. Co.*, 2009-Ohio-494, ¶ 20 (8th Dist.). *See also State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman*, 51 Ohio St.3d 94, 95 (1990) ("Trial courts have extensive jurisdiction and power over discovery."). However, the court's discretion is not unlimited. *State ex rel. Haber Polk Kabat,*

*L.L.P. v. Sutula*, 2018-Ohio-2223, ¶ 8 (8th Dist.). Therefore, we review the court's rulings on the parties' joint motion for continuance to conduct discovery and on Reliable's Civ.R. 56(F) motion for discovery for an abuse of discretion.

{¶ 31} A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion also implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 13. When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, ¶ 22 (8th Dist.). However, a trial court should generally exercise discretion in favor of a party seeking further time for discovery under Civ.R. 56(F). *Drake Contr. Co. v. Kemper House Mentor, Inc.*, 2007-Ohio-120, ¶ 29 (11th Dist.), citing *King v. Zell*, 1998 Ohio App. LEXIS 6364, *10 (11th Dist. Dec. 31).

{¶ 32} We note that the trial court never expressly overruled Reliable's Civ.R. 56(F) motion for discovery. "[M]otions that a trial court fails to explicitly rule upon are deemed denied once a court enters final judgment." *Hopkins v. Greater Cleveland Regional Transit Auth.*, 2024-Ohio-2265, ¶ 40, citing *State v. Nikolic*, 2020-Ohio-3718, ¶ 5 (8th Dist.).

{¶ 33} Reliable submitted an affidavit with its brief in opposition to Megalight's motion for summary judgment, explaining that it needed more time to conduct discovery to properly oppose the motion. Habeeb stated in his affidavit that

Reliable attempted to take Jiang's deposition, but Jiang was unable to complete the deposition before the discovery deadline. (Habeeb aff. ¶ 52-55.) However, Habeeb did not state specific reasons as to why Jiang's affidavit was essential to Reliable's brief in opposition, especially since Habeeb had personal knowledge of the facts and submitted an affidavit contesting the facts averred in Jiang's affidavit. Indeed, we have found genuine issues of material fact as a result of the conflicting statements in the competing affidavits. Therefore, defendants were not prejudiced by the trial court's denial of the parties' request for extensions of time to conduct depositions for purposes of Megalight's motion for summary judgment. However, depositions will be necessary on remand to posture the case for resolution whether by trial or settlement agreement. The scope of our analysis is limited to the discovery needed to oppose Megalight's motion for summary judgment and does not extend to other pretrial proceedings.

{¶ 34} Finally, we note that Habeeb's affidavit was sufficient to overcome Megalight's motion for summary judgment on appeal. Therefore, the court's failure to grant Reliable's motion to strike Jiang's affidavit is of no consequence for purposes of Megalight's motion for summary judgment.

{¶ 35} Accordingly, the third, fourth, and fifth assignments of error are overruled.

## C. Right to File a Motion for Summary Judgment

{¶ 36} In the sixth assignment of error, Reliable argues the trial court erred in denying it leave to file a motion for summary judgment. Reliable contends the

trial court treated it unfairly because the court denied it leave to file a motion for summary judgment while granting leave to Megalight to a file a motion for summary judgment. It is not clear why the court refused to grant Reliable leave to a motion; the court did not provide a reason. Nevertheless, because we find there are genuine issues of material fact for trial and that the court erred in granting summary judgment in favor of Megalight, the denial of leave to allow Reliable to file a separate motion for summary judgment was harmless.

{¶ 37} The sixth assignment of error is overruled.

{¶ 38} Judgment reversed, and case remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER,.A.J., and
EMANUELLA D. GROVES, J., CONCUR