[Cite as *Barge v. St. Bernard*, 195 Ohio App.3d 28, 2011-Ohio-3573.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BARGE et al., | : | APPEAL NO. C-100764 |
| | | TRIAL NO. A-1005718 |
| Appellees, | : | |
| v. | : | *O P I N I O N.* |
| CITY OF ST. BERNARD, | : | |
| Appellant. | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:   Affirmed in Part, Reversed and Final Judgment
                             Entered in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  July 22, 2011

Eric C. Deters & Associates, P.S.C., Eric C. Deters, Charles T. Lester Jr., and Laura Tholke, for appellees.

Taft, Stettinius & Hollister, L.L.P., Kim K. Burke, and Kristen L. Safier, for appellant.

HILDEBRANDT, Judge.

{¶ 1}    The defendant-appellant, city of St. Bernard, appeals the judgment of the Hamilton County Court of Common Pleas denying its motion to dismiss in a case involving the operation of a landfill.

### *The Former Landfill Site*

{¶ 2}   The plaintiffs-appellees, Richard Barge, Thomas Barge, Kathleen Barge, Robert Craddock, Deborah Craddock, Norma Kennedy, Michael Ramsey, Stephanie Ramsey, James Rickenbaugh, Mindy Rickenbaugh, Robert Schrenk, Sandy Schrenk, Jan Shrader, Jackie Shrader, Kathy Sinclair, Gregg Ziegler, and Molly Ziegler, own homes in the vicinity of Lytle Park in St. Bernard.  For a long period of time ending in 1985, the park had been the site of a landfill operated by the city.

{¶ 3}   In 2010, the appellees filed a class-action complaint alleging that dangerous levels of methane and volatile organic compounds ("VOCs") continued to emanate from the former landfill property to the detriment of the appellees and similarly situated homeowners. According to the complaint, the gases had been emitted at such high levels that they had been determined to be hazardous by the director of the Ohio Environmental Protection Agency.

{¶ 4}   The appellees alleged that the city was liable for the emanations because it had accepted "domestic waste, commercial waste, industrial waste, and demolition waste" and that it had "allowed, or failed to prevent, industrial liquid waste to be deposited at the landfill."

{¶ 5}   The appellees set forth causes of action for negligence, trespass, and nuisance, claiming that the city's actions or omissions had endangered their "health, comfort and safety" and had damaged their real property.

{¶ 6}   The city filed a motion to dismiss, asserting that it was immune from liability under R.C. Chapter 2744.  The trial court overruled the motion.  In a single assignment of error, the city now contends that the trial court erred in denying its motion to dismiss.

### *The Motion to Dismiss*

**{¶ 7}**  In ruling on a motion made under Civ.R. 12(B)(6), the trial court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the nonmoving party.[1]  The court may dismiss a complaint under Civ.R. 12(B)(6) only when the plaintiff can prove no set of facts that would entitle the plaintiff to relief.[2]  An appellate court's review of a ruling on a motion to dismiss under Civ.R. 12(B)(6) is conducted de novo.[3]

**{¶ 8}**  To decide whether a political subdivision is immune from liability under R.C. 2744.02, courts use a three-tiered analysis.[4]  In the first tier, a general grant of immunity is provided:  "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."[5]

**{¶ 9}**  In the second tier of the analysis, a court must determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) applies.[6]  If any exception applies to impose liability, the third tier of the analysis focuses on whether any of the defenses contained in R.C. 2744.03 applies to reinstate immunity.[7]

### *Landfill: Governmental or Proprietary Function?*

**{¶ 10}** We begin with a discussion of the appellees' negligence claim.

---

[1] *Mann v. Cincinnati Enquirer*, 1st Dist. No. C-090747, 2010-Ohio-3963, ¶ 11, jurisdictional motion overruled, 127 Ohio St.3d 1504, 2011-Ohio-19, 939 N.E.2d 1267.
[2] *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus.
[3] *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.
[4] *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10.
[5] R.C. 2744.02(A)(1).
[6] *Elston* at ¶ 11.
[7] Id. at ¶ 12.

**{¶ 11}** The functions of a municipality are divided into governmental and proprietary functions.[8] The appellees contend that an exception to immunity exists under R.C. 2744.02(B)(2), which provides that "[e]xcept as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." The city, on the other hand, argues that the operation of the landfill was a governmental function and that the exception in R.C. 2744.02(B)(2) therefore does not apply.

**{¶ 12}** Deciding the issue requires the untangling of a number of statutory provisions. Under R.C. 2744.01(C)(2), the term "governmental function" includes "[t]he collection and disposal of solid wastes, as defined in section 3734.01 of the Revised Code, including, but not limited to, the operation of solid waste disposal facilities, as 'facilities' is defined in that section, and the collection and management of hazardous waste generated by households. As used in division (C)(2)(k) of this section, 'hazardous waste generated by households' means solid waste originally generated by individual households that is listed specifically as hazardous waste in or exhibits one or more characteristics of hazardous waste as defined by rules adopted under section 3734.12 of the Revised Code, but that is excluded from regulation as a hazardous waste by those rules."[9]

**{¶ 13}** R.C. 3734.01(E), in turn, defines "solid wastes" as "such unwanted residual solid or semisolid material as results from industrial, commercial, agricultural, and community operations, excluding earth or material from construction, mining, or demolition operations, or other waste materials of the type that normally would be included in demolition debris, nontoxic fly ash and bottom ash, including at least ash

---

[8] R.C. 2744.02(A)(1).
[9] R.C. 2744.01(C)(2)(k).

that results from the combustion of coal and ash that results from the combustion of coal in combination with scrap tires where scrap tires comprise not more than fifty percent of heat input in any month, spent nontoxic foundry sand, and slag and other substances that are not harmful or inimical to public health, and includes, but is not limited to, garbage, scrap tires, combustible and noncombustible material, street dirt, and debris. 'Solid wastes' does not include any material that is an infectious waste or a hazardous waste."

{¶ 14} Also, hazardous wastes are excluded from the definition of "solid wastes." "Hazardous waste" is defined in R.C. 3734.01(J) as "any waste or combination of wastes in solid, liquid, semisolid, or contained gaseous form that in the determination of the director, because of its quantity, concentration, or physical or chemical characteristics, may do either of the following: (1) [c]ause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness; (2) [p]ose a substantial present or potential hazard to human health or safety or to the environment when improperly stored, treated, transported, disposed of, or otherwise managed."

{¶ 15} Thus, under R.C. 3734.01, commercial and industrial wastes are included in the definition of "solid wastes," but demolition waste is excluded. And though liquid waste is not specifically addressed, it appears self-evident that such wastes are not included in the definition of solid wastes. Finally, hazardous waste is excluded unless it is produced by individual households.

{¶ 16} In this case, the appellees alleged facts that would place the landfill outside the definition of a governmental function. The appellees alleged that the city had accepted both demolition waste and industrial liquid waste at the landfill. The allegations also indicated that the materials stored at the landfill were hazardous in that

they produced methane and VOCs in amounts that threatened the safety and health of the surrounding residents. According to the complaint, the production of such gases had been identified as hazardous by the director of the Ohio Environmental Protection Agency. And though the collection and disposal of "hazardous waste generated by households" is defined as a governmental function, the allegations in the appellees' complaint indicate that the wastes stored at the landfill came from sources other than households.

**{¶ 17}** Thus, the appellees alleged that the city accepted three types of waste that were not classified as "solid waste" under R.C. 2744.01(C)(2)(k): demolition waste, liquid industrial waste, and hazardous waste. For this reason, the appellees' allegations, accepted as true, would place the operation of the landfill outside the ambit of R.C. 2744.01(C)(2)(k) and would place it within the definition of a proprietary function.

**{¶ 18}** The city does not assert that any of the defenses under R.C. 2744.03 apply to this case. Thus, we conclude that the appellees have alleged sufficient facts to withstand a motion to dismiss on the issue of immunity with respect to their negligence claim.

### *Trespass and Nuisance*

**{¶ 19}** Next we address the appellees' claims for trespass and nuisance. As this court has held, "[t]he exceptions of R.C. 2744.02(B)(1) through (B)(4) are limited to negligent conduct."[10] Because trespass is an intentional tort, the exceptions to immunity under the statute do not apply.[11] And this court has recently held that R.C.

---

[10] See *Bucey v. Carlisle,* 1st Dist. No. C-090252, 2010-Ohio-2262, ¶ 27.
[11] See *Sisler v. Lancaster,* 5th Dist. No. 09-CA-47, 2010-Ohio-3039, ¶ 26.

2744.02 no longer imposes liability on a municipality for nuisance.[12]  The trial court therefore erred in denying the motion to dismiss the trespass and nuisance claims.

### *Conclusion*

**{¶ 20}** The judgment of the trial court is affirmed with respect to the appellees' negligence claim, and the case is remanded for further proceedings.  The judgment is reversed with respect to the claims for trespass and nuisance, and judgment is hereby entered in favor of the city on those claims.

Judgment accordingly.

DINKELACKER, P.J., and CUNNINGHAM, J., concur.

---

[12] *Vonderhaar v. Cincinnati,* 191 Ohio App.3d 229, 2010-Ohio-6289, 945 N.E.2d 603, ¶ 31.