[Cite as *Ponyicky v. Schemrich*, 2014-Ohio-3540.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| | | |
|---|---|---|
| JAMES PONYICKY, et al. | | C.A. No. 13CA0039-M |
| Appellees | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF BRUNSWICK, et al. | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellants | | CASE No. 12CIV0736 |

DECISION AND JOURNAL ENTRY

Dated: August 18, 2014

CARR, Judge.

{¶1} Defendant-Appellant, the City of Brunswick ("the City"), appeals from the decision of the Medina County Court of Common Pleas in favor of Plaintiffs-Appellees, James and Cindy Ponyicky ("the Ponyickys"). This Court affirms.

I.

{¶2} On the morning of May 22, 2010, a bus owned by the City and operated by Crystal Schemrich collided with the back of a car driven by Mr. Ponyicky. Mr. Ponyicky was injured as a result of the accident, and the City, via Schemrich, was cited for failing to maintain an assured clear distance.

{¶3} The Ponyickys brought suit against the City and Schemrich for negligent operation and loss of consortium.[1] Schemrich filed a motion for judgment on the pleadings,

---

[1] The Ponyickys later added a claim for negligent maintenance, but the instant appeal does not involve that additional claim.

arguing that she was immune from suit due to her status as an employee of a political subdivision. Schemrich specified that she was not an employee of the City, but was still an employee of a political subdivision. She later identified her employer as Medina County Public Transit ("Medina Transit"). The Ponyickys ultimately conceded that Schemrich was immune from suit regardless of which political subdivision was her employer. The trial court, therefore, granted Schemrich's motion and dismissed her from the litigation.

{¶4} Subsequently, the City filed a motion for summary judgment, arguing that it was immune from suit without exception because Schemrich was not its employee. The City argued that Schemrich was the employee of Medina Transit, an independent contractor for the City. The Ponyickys filed a brief in opposition, arguing that genuine issues of material fact existed as to whether Schemrich was the City's employee. The City filed a reply brief, and the Ponyickys filed a surreply. The trial court determined that genuine issues of material fact existed for trial and denied the City's motion.

{¶5} The City now appeals from the court's decision and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY DENYING APPELLANT/DEFENDANT CITY OF BRUNSWICK THE BENEFIT OF IMMUNITY UNDER OHIO'S POLITICAL SUBDIVISION TORT LIABILITY ACT.

{¶6} In its sole assignment of error, the City argues that the trial court erred by denying its motion for summary judgment. Specifically, it argues that it was immune from the Ponyickys' negligent operation claim as a matter of law because Schemrich was not its

employee. We do not agree that the trial court erred by denying the City's motion for summary judgment.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} As a general rule, political subdivisions are "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). This immunity, however, is subject to the exceptions described in R.C. 2744.02(B). One of those exceptions provides that "political subdivisions are liable for injury * * * or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." R.C. 2744.02(B)(1). "'Employee' means an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." R.C. 2744.01(B). Independent contractors are not employees for purposes of the immunity statute. *Id.*

{¶11} "The chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work." *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 33, quoting *Bobik v. Indus. Comm.*, 146 Ohio St. 187 (1946), paragraph one of the syllabus. The right to control is not simply the right to accept or reject the final work product, but the right to direct "the details or method of doing the work." *Gillum v. Indus. Comm.*, 141 Ohio St. 373, 382 (1943), quoting 27 American Jurisprudence, Section 7, at 488.

> The determination of who has the right to control must be made by examining the individual facts of each case. The factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.

*Bostic v. Connor*, 37 Ohio St.3d 144, 146 (1988). "If such right is in the employer, the relationship is that of employer and employee; but if the manner or means of performing the work is left to one responsible to the employer for the result alone, an independent contractor relationship is created." *Pusey v. Bator*, 94 Ohio St.3d 275, 279 (2002).

{¶12} "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic* at paragraph one of the syllabus. *Accord Behner v. Indus. Comm.*, 154 Ohio St. 433 (1951), paragraph one of the syllabus. A trial court may decide the issue as a matter of law if "the evidence is not in conflict or the facts are admitted." *Bostic* at 146. If there is some evidence that a person is an employee and not an independent contractor, however, the issue is one for a jury. *Id.* at 146-147. *Accord Zacharias v. Ampco Systems Parking*, 9th Dist. Summit No. 18672, 1998 WL 312540, *3 (June 10, 1998) (summary judgment inappropriate where contractual language created issue of fact regarding whether company operated political subdivision's parking garage as an employee or an independent contractor).

{¶13} In support of its motion for summary judgment, the City relied upon the affidavit of Holly Muren. Muren identified herself as the Human Resources Manager for the Medina County Board of Commissioners. She averred that she had reviewed Medina County's records and had personal knowledge that, at the time Schemrich was driving the bus that struck Mr. Ponyicky, Schemrich was an employee of Medina County.

{¶14} In opposing the City's motion, the Ponyickys pointed to the language of the contract between the City and Medina Transit, as well as the deposition testimony of Schemrich and Sam Scaffide, the City's former service director. The Ponyickys argued that summary

judgment was inappropriate because the foregoing evidence raised at least a genuine issue of material fact as to Schemrich's employment status at the time of the accident.

{¶15} Scaffide testified that, during his eight years with the City, the City contracted with two different entities to secure drivers for the Brunswick Transit Alternative[2] ("the BTA"), the City's bus system. The first entity was Buckeye Transit. The second, Medina Transit, took over in January 2010 when it outbid Buckeye Transit. Scaffide acknowledged that, when Medina Transit won the bid, the City suggested that it hire the existing drivers. Several of the existing drivers were, in fact, hired, but Scaffide insisted that the drivers were not employees of the City. Scaffide testified that the City owned the buses, maintained and repaired the buses, owned the garage where the buses were stored, and set the bus routes and schedules, but did not have any control over the actual drivers. He conceded, however, that the City required the drivers to arrive a minimum of 20 minutes before their scheduled shift to perform pre-trip inspections and safety checks. He also acknowledged that the City's contract with Medina Transit required drivers to adhere to a dress code and provided that the City had to "approve all drivers in advance of their operation of route service." Moreover, Scaffide agreed that, on at least one occasion, Medina Transit had removed a driver at the City's request.

{¶16} Schemrich testified that she had ten years' worth of experience driving buses for the BTA and was hired by Medina Transit after it outbid Buckeye Transit. She testified that there were seven drivers for the BTA and that they were "[p]retty much" all the same drivers who had driven for the BTA before the contract went to Medina Transit. Schemrich faxed her

---

[2] In multiple places in the record, the City's bus system is alternatively referred to as the Brunswick Transit Authority.

time sheets to Medina County and received her paychecks from Medina Transit. She also testified that Medina Transit provided her with vision benefits, sent her to SUMMA to obtain a physical/wellness card, and issued her a Medina Transit identification badge. Nevertheless, Schemrich testified that she received her training from the BTA and that Medina Transit never conducted any additional training.

{¶17} The contract between the City and Medina Transit sets forth the BTA bus route and schedule in explicit detail. It provides that the BTA

> consists of a fixed route circulator/loop system, operating two routes simultaneously * * *. The service will operate using buses of 16 or 22-30 passenger capacity between the hours of 6:20 a.m. and 7:20 p.m., Monday through Friday. Saturday service operates from 10:20 a.m. – 5:20 p.m. The routes will be approximately 12-19 miles in length and are expected to operate on headways of 50-55 minutes each. Each route will be covered by 26 runs a day, (excluding Saturdays) resulting in approximately 400 total miles of service each day.

The contract also provides that "[o]verall supervision and administration of the system will be provided by the City * * *."

{¶18} According to the contract, Medina Transit was responsible "for hiring, paying, supervising, and disciplining personnel for the purposes of operating the fixed route bus service." Nevertheless, the contract requires drivers to arrive on site at least 20 minutes before their shift to complete pre-trip inspections and safety checks and to "adhere to a dress code specified by the City." It also requires Medina Transit (1) to appoint a manager or lead driver to "be responsible to both [Medina Transit] and appropriate City personnel for all daily contracted services"; and (2) to "administer[] a progressive discipline system to deal with and/or eliminate any problem drivers." Per the contract, the progressive discipline system had to include measures to address specific violations by drivers, including vehicle accidents, cellular phone use for personal reasons while operating the bus, early or late operation, unexcused absences, and complaints for

discourteous behavior, unsafe driving, and the like. Further, the contract gives the City the right to "approve of all drivers in advance of their operation of route service" and requires Medina Transit to provide the City with copies of the drivers' driving records and licenses.

{¶19} The contract requires Medina Transit to operate the City's buses on a fixed route according to the routes and schedules that the City establishes. It does not permit drivers to deviate from the fixed route established by the City. In fact, the contract establishes a performance requirement program under which the City may penalize Medina Transit financially for any substandard performances. An unauthorized deviation from the City's route is one category under which the City may impose a financial penalty. Other categories include missed runs, late runs, missed transfer connections, and noncompliance with the dress code.

{¶20} Under the contract, Medina Transit was responsible for obtaining liability insurance naming the City as an additional insured interest, as well as collision and comprehensive damage coverage. It also was required to indemnify the City for claims brought by third parties that arose out of its performance or nonperformance of the contract. Additionally, Medina Transit agreed to secure and maintain workers' compensation insurance for the drivers.

{¶21} The trial court determined that the City was not entitled to summary judgment because "genuine issues of material fact are present with regards to whether Ms. Schemrich was an independent contractor or an employee of the City * * *." The City argues that the court erred in its determination because the facts underlying this case are undisputed. Given that the facts are undisputed, the City avers, the court erred by not deciding, as a matter of law, that Schemrich was an independent contractor.

**{¶22}** The City argues that Schemrich was an independent contractor, as evidenced by the fact that Medina Transit hired her, paid her, provided her with insurance, and supervised her. The City argues that its contract with Medina Transit did not create an employer-employee relationship. Rather, it set forth guidelines and requirements that would allow the City to achieve a certain result; a bus service that operated on time and was in accordance with the law and the City's program. The City maintains that it "did not control the actual work [Medina Transit] hired [Schemrich] to do (driving)."

**{¶23}** As set forth above, the issue of "[w]hether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic*, 37 Ohio St.3d 144, at paragraph one of the syllabus. The issue becomes one of law only when "the evidence is not in conflict or the facts are admitted." *Id.* at 146. If there is some evidence that a person is an employee and not an independent contractor, the issue is one for a jury. *Id.* at 146-147. The case of *Bostic* is instructive.

**{¶24}** Bostic was a truck driver who agreed to haul freight for a trucking company in return for a percentage of the gross revenue the trucking company would receive for the delivery. Bostic agreed to use his own tractor and trailer to deliver the freight, but his tractor broke down en route to delivery. He left the trailer and freight at the site of the breakdown and had his tractor towed back to the trucking company. He and the trucking company then agreed that he could use one of the trucking company's tractors to finish the trip in exchange for a reduced profit. The trucking company gave Bostic two credit cards to use towards gasoline or repairs, if the need arose, and instructed Bostic to return immediately after making the delivery. Additionally, the trucking company and Bostic, who was a former employee, discussed the possibility of rehiring him as a full-time employee. No decisions were made, however, and

Bostic took the tractor home for the night. He was fatally injured when he resumed his trip the following day and his tractor veered off the highway.

{¶25} After the Industrial Commission allowed Bostic's family's claim for death benefits, the trucking company appealed. *Id.* at 145. The court of common pleas refused to enter summary judgment on the issue of whether Bostic was an independent contractor or the trucking company's employee at the time of his death. *Id.* at 146. The issue was submitted to the jury, and Bostic's family prevailed. On later appeal to the Supreme Court, the trucking company argued that the lower court had erred by not deciding as a matter of law that Bostic was an independent contractor, based on the undisputed facts in the case. *Id.* The Supreme Court disagreed, noting that reasonable minds could "differ on the issue of who had the right to control the manner or means of doing the work." *Id.* at 147. The Supreme Court held:

> Our review of the record reveals that there was evidence from which the jury could reasonably infer that Bostic was either an employee or an independent contractor.
>
> On one hand, evidence was presented which tends to prove Bostic had the right to control the manner or means of doing his job. Bostic's original agreement with [the trucking company] was in the form of a lease agreement rather than a union contract between [the trucking company] and its employees. [Bostic] was not a member of the union to which [the trucking company's] employees belonged. He began to make the delivery with his own tractor. He did not fill out the health insurance forms required of [the trucking company's] employees. He did not agree to become [the trucking company's] full-time employee again in his discussion of the matter * * *. The jury could reasonably conclude from this evidence that Bostic was an independent contractor.
>
> On the other hand, evidence was presented which tends to indicate that [the trucking company] had the right to control the manner or means by which Bostic did his work. At the time of the accident, Bostic was using [the trucking company's] tractor-trailer. The amended agreement between Bostic and [the trucking company] provided that, for the second half of the haul, Bostic would be paid the same percentage of gross revenue as any other employee. [The trucking company] provided Bostic with credit cards. [It] paid Bostic with an employee payroll check, rather than the kind of check [it] used to pay independent contractors. [It] withheld taxes from Bostic's pay. [It] gave Bostic specific

instructions to return immediately after the delivery without soliciting a return cargo. From this evidence, the jury could reasonably infer that Bostic was [the trucking company's] employee.

Construing the evidence most strongly in [Bostic's] favor, we cannot say the trial court erred in denying [the trucking company's] motion for summary judgment.

*Id.* at 147. Although *Bostic* was a workers' compensation case, the Ohio Supreme Court has not limited it to cases arising out of that context. *See, e.g., State ex rel Nese*, 136 Ohio St.3d 103, 2013-Ohio-1777, at ¶ 35 (*Bostic* relied upon as portion of the common law test for determining whether a person is an employee or independent contractor).

{¶26} Having reviewed the record, we must conclude that summary judgment would not have been appropriate in this case. On the one hand, there was evidence that Medina Transit hired Schemrich, could discipline or terminate her, paid her wages, insured her, and was responsible for obtaining workers' compensation insurance for her. On the other hand, there was evidence that Medina Transit hired Schemrich at the City's suggestion, agreed to use a progressive discipline system to address very specific problems with the drivers, and removed at least one driver at the City's request. The contract itself provided that the City had to "approve all drivers in advance of their operation of route service." Moreover, the contract did not give Medina Transit or its drivers any control over the City's bus routes. Drivers had to operate the buses on a fixed route and any deviations from that route or late or missed runs could result in Medina Transit incurring a financial penalty. Additionally, the City required drivers to arrive a certain amount of time before their scheduled shift to perform mandatory pre-trip inspections on the buses. The City owned all of the BTA buses, and Schemrich testified that the BTA had trained her. She also testified that she had been driving the BTA buses for ten years.

{¶27} The City is correct that "every contract for work reserves to the employer a certain degree of control to enable him to ensure that the contract is performed according to

specifications." *Id.* at ¶ 34. Here, however, the Ponyickys set forth evidence that the City had control over, not only the final work product, but also "the details or method of doing the work." *Gillum*, 141 Ohio St. at 382, quoting 27 American Jurisprudence, Section 7, at 488. Because reasonable minds could differ on the issue of whether Schemrich was an independent contractor or an employee of the City, the trial court could not decide the issue as a matter of law. *See Bostic*, 37 Ohio St.3d at 146-147; *Zacharias*, 1998 WL 312540, at *3. *Compare Moore v. Honican*, 194 Ohio App.3d 135, 2011-Ohio-2109, ¶ 27 (1st Dist.) (officer was independent contractor for township as a matter of law where uncontroverted evidence showed that his department hired and paid him, assigned his duties, and made all decisions regarding promotion, discipline, and other employment matters); *Parrett v. Trost*, 12th Dist. Clermont No. CA99-06-058, 2000 WL 155515, *3 (Feb. 7, 2000) (employee-employer relationship did not exist as a matter of law where individual towed motorcycle owned by the city, but was never officially hired, used his own vehicle to tow the motorcycle, independently determined the route he would take, and had never before towed items for the city). The court did not err by denying the City's motion for summary judgment. Accordingly, the City's sole assignment of error is overruled.

III.

{¶28} The City's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

TODD M. RASKIN, CARL E. CORMANY and FRANK H. SCIALDONE, Attorneys at Law, for Appellant.

KENNETH J. FISHER, Attorney at Law, for Appellant.

PAUL KNOTT, Attorney at Law, for Appellees.