[Cite as *5812 Invest. Group, L.L.C. v. Columbus*, 2024-Ohio-5930.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| 5812 Investment Group, LLC, | : | |
| Plaintiff-Appellee, | : | No. 24AP-290 |
| | | (C.P.C. No. 24CV-0488) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| City of Columbus et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on December 19, 2024

**On brief:** *Willis Law Firm, LLC*, and *Alexander H. Maxwell*, for appellee. **Argued:** *Alexander H. Maxwell*.

**On brief:** *Zachary M. Klein*, City Attorney, *Sheena D. Rosenberg*, for City of Columbus. **Argued:** *Sheena D. Rosenberg*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, the City of Columbus, appeals a judgment of the Franklin County Court of Common Pleas that denied the City's motion to dismiss for failure to state a claim upon which relief can be granted. For the following reasons, we affirm that judgment in part and reverse it in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On January 22, 2024, plaintiff-appellee, 5812 Investment Group, LLC ("Investment Group"), filed a complaint against the City, Conie Construction Company, and

Jack Conie & Sons, Corporation.[1]  In the complaint, Investment Group alleged that the City hired Conie to replace the fire hydrant located on a hill adjacent to an apartment complex owned by Investment Group.  On April 17, 2023, Conie "began the process of working on [the] hydrant and dug out the hydrant all the way to the water line below ground level." (Compl. at ¶ 10.)  Specifically, Conie "excavated a hole 15 feet below grade exposing the water line that was connected to the hydrant." *Id.* at ¶ 11.  The exposed water line burst the night of April 17, 2023 because, according to the complaint, Conie "negligently failed to shore the line and relieve the pressure on the hydrant." *Id.* at ¶ 12.  Water from the burst water line streamed down the hill and flooded Investment Group's apartment complex. Several units in the apartment complex sustained water damage.  Based on these facts, Investment Group asserted claims against the City and Conie for negligence, trespass, interference with water rights, and private nuisance.

{¶ 3}  While Conie answered the complaint, the City moved for dismissal under Civ.R. 12(B)(6).  The City argued that it was immune from Investment Group's claims under R.C. Chapter 2744, the Political Subdivision Tort Liability Act.  In response, Investment Group argued that the statutory exception in R.C. 2744.02(B)(2) stripped the City of political-subdivision immunity.

{¶ 4}  In a judgment entered April 17, 2024, the trial court denied the City's motion to dismiss.  The trial court determined that it was not clear from the face of the complaint that the City was entitled to immunity.

## II.  ASSIGNMENT OF ERROR

{¶ 5}  The City now appeals the April 17, 2024 judgment, and it assigns the following error:

> The trial court erred when it denied Columbus immunity
> pursuant to R.C. Chapter 2744 by denying Columbus' motion
> to dismiss.

## III.  STANDARD OF REVIEW

{¶ 6}  A Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint.  *Volbers-Klarich v. Middletown Mgt., Inc.*,

---

[1] The complaint alleges that Conie Construction Company is a registered trade name of Jack Conie & Sons, Corporation. The corporation admitted in its answer that it does business as Conie Construction Company. We, therefore, will refer to both the corporation and its trade name as "Conie."

125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. For a trial court to dismiss a complaint under Civ.R. 12(B)(6), "[i]t must appear beyond doubt that [the] plaintiff can prove no set of facts entitling her to relief." *Id*. at ¶ 12. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991).

{¶ 7} Appellate courts review de novo a trial court's ruling on a Civ.R. 12(B)(6) motion. *Valentine v. Cedar Fair, L.P.*, 169 Ohio St.3d 181, 2022-Ohio-3710, ¶ 12; *Lunsford v. Sterilite of Ohio, L.L.C.*, 162 Ohio St.3d 231, 2020-Ohio-4193, ¶ 22. In conducting this review, an appellate court accepts as true the factual allegations in the complaint and construes those allegations and any reasonable inferences drawn from them in the nonmoving party's favor. *Valentine* at ¶ 12.

{¶ 8} A trial court may grant a Civ.R. 12(B)(6) motion to dismiss based on an affirmative defense, such as political-subdivision immunity, if the existence of the affirmative defense is obvious from the face of the complaint. *OMG MSTR LSCO, L.L.C. v. Dept. of Medicaid*, 10th Dist. No. 18AP-223, 2018-Ohio-4843, ¶ 16; *Galbreath v. Martin*, 10th Dist. No. 12AP-324, 2013-Ohio-80, ¶ 9. In other words, if the allegations contained in the complaint obviously or conclusively establish that the political subdivision is immune, then the trial court may determine that the complaint fails to state a claim upon which relief can be granted as to that political-subdivision defendant. *Plush v. Cincinnati*, 1st Dist. No. C-200030, 2020-Ohio-6713, ¶ 13; *Main v. Lima*, 3d Dist. No. 1-14-42, 2015-Ohio-2572, ¶ 17.

{¶ 9} However, when considering whether to grant the Civ.R. 12(B)(6) motion based on an immunity affirmative defense, the trial court must remain mindful that "a plaintiff is not required to prove his or her case at the pleading stage." *York* at 144-45. Ohio is a notice pleading state. *Doe v. Greenville City Schools*, 171 Ohio St.3d 763, 2022-Ohio-4618, ¶ 7. Thus, a complaint need only include "a short and plain statement of the claim," Civ.R. 8(A), not affirmatively dispose of the immunity question. *DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 10th Dist. No. 18AP-567, 2019-Ohio-3158, ¶ 11; *Molar v. Green*, 9th Dist. No. 29072, 2019-Ohio-3083, ¶ 13; *Main* at ¶ 13. In short, a plaintiff has no obligation to anticipate a political subdivision's assertion of an immunity defense and plead facts to

disprove that defense in its complaint. *Carroll v. Cuyahoga Community College*, 8th Dist. No. 112257, 2023-Ohio-3628, ¶ 18; *DSS Servs., L.L.C.* at ¶ 10; *Molar* at ¶ 14; *Harris Farms, L.L.C. v. Madison Twp. Trustees*, 4th Dist. No. 17CA3817, 2018-Ohio-4123, ¶ 17. Therefore, the absence of factual allegations in the complaint demonstrating an exception to immunity is not grounds to grant a Civ.R. 12(B)(6) motion to dismiss based on that affirmative defense. *Granite City Ctr., L.L.C. v. Bd. of Trustees of Champion Twp.*, 11th Dist. No. 2020-T-0083, 2021-Ohio-1458, ¶ 25.

## IV. LEGAL ANALYSIS

{¶ 10} By its only assignment of error, the City argues that the trial court erred in denying its motion to dismiss for failure to state a claim. The City maintains that the trial court should have granted its motion because R.C. Chapter 2744 entitles it to immunity from liability for Investment Group's claims.

{¶ 11} R.C. Chapter 2744 sets forth a three-tiered test for determining whether a political subdivision is immune from liability for tort claims. *Riffle v. Physicians & Surgeons Ambulance Serv., Inc.*, 135 Ohio St.3d 357, 2013-Ohio-989, ¶ 15. In the first tier, the court applies the general rule that a political subdivision is immune from liability incurred during the performance of either a governmental or proprietary function. *Id.*; *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, ¶ 11; R.C. 2744.02(A)(1). That immunity, however, is subject to the five exceptions contained in R.C. 2744.02(B). *Doe*, 2009-Ohio-1360, at ¶ 12. Accordingly, the second tier of the analysis requires a court to determine whether any of the R.C. 2744.02(B) exceptions apply. *Riffle* at ¶ 15. If the court answers negatively, then the analysis ends, and the political subdivision retains its general grant of immunity. *Harris v. Columbus*, 10th Dist. No. 15AP-792, 2016-Ohio-1036, ¶ 32. If the court answers affirmatively, then it must move to the third tier: determining whether any of the R.C. 2744.03 defenses against liability require the court to reinstate immunity. *Riffle* at ¶ 15; *Doe*, 2009-Ohio-1036, at ¶ 12.

{¶ 12} The parties do not dispute that the City is a political subdivision entitled to a general grant of immunity under the first tier of the immunity test. Investment Group contends, however, that in the second tier, the exception set forth in R.C. 2744.02(B)(2) removes that immunity so that it may assert its claims for negligence, interference with

water rights, and private nuisance. Notably, Investment Group does not contest that the R.C. 2744.02(B)(2) exception is inapplicable to its claim for trespass.

{¶ 13} According to the exception set forth in R.C. 2744.02(B)(2), political subdivisions are "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Intentional torts, like trespass, do not trigger the R.C. 2744.02(B)(2) exception to immunity. *Wallace v. Rossford*, 6th Dist. No. WD-17-061, 2018-Ohio-2598, ¶ 30; *Fink v. Twentieth Century Homes, Inc.*, 8th Dist. No. 99550, 2013-Ohio-4916, ¶ 21; *Barge v. St. Bernard*, 195 Ohio App.3d 28, 2011-Ohio-3573, ¶ 19 (1st Dist.); *Sisler v. Lancaster*, 5th Dist. No. 09-CA-47, 2010-Ohio-3039, ¶ 26-28. Therefore, the City is entitled to immunity on Investment Group's claim for trespass, and the trial court erred in not dismissing that claim.

{¶ 14} With regard to the remaining claims, the City argues that the R.C. 2744.02(B)(2) exception to immunity does not apply for two reasons: (1) Conie was engaged in a governmental, not proprietary, function when its alleged negligence caused the flooding of Investment Group's apartment complex, and (2) Conie was the City's independent contractor, not its employee. We will first address whether Conie was performing a governmental or proprietary function when the failure to shore the water line caused it to burst, flooding Investment Group's apartment complex.

{¶ 15} R.C. 2744.01 sets out the mutually exclusive definitions of "governmental function" and "proprietary function." *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 557 (2000). A function is governmental if it is among those functions listed in R.C. 2744.01(C)(2). R.C. 2744.01(C)(1); *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶ 12. A function is proprietary if it is a function listed in R.C. 2744.01(G)(2). R.C. 2744.01(G)(1); *Moore* at ¶ 11.

{¶ 16} To argue that Conie was engaged in a governmental function, the City relies on R.C. 2744.01(C)(2)(a), which lists "[t]he provision or nonprovision of * * * fire * * * services or protection" as a governmental function. The City points out that, when the apartment complex flooded, Conie was in the process of replacing a fire hydrant. Because fire hydrants play a vital role in the provision of fire protection, the City contends that the

replacement of fire hydrants constitutes a governmental function under R.C. 2744.01(C)(2)(a).

{¶ 17} Investment Group does not directly contest the City's contention that the replacement of fire hydrants is a governmental function. Instead, Investment Group directs this court to the allegations in the complaint that it incurred damages because Conie "excavated a hole 15 feet below grade exposing the water line" and "negligently failed to shore the line and relieve the pressure on the hydrant." (Compl. at ¶ 11-12.) Based on these allegations, Investment Group asserts that the negligence at issue arose from Conie's mishandling of the water line, not any lack of care as to the fire hydrant. Investment Group, therefore, asserts that Conie's conduct falls within the definition of "proprietary function" under R.C. 2744.01(G)(2)(c), which lists "[t]he * * * maintenance * * * of a utility, including, but not limited to, * * * a municipal corporation water supply system" as a proprietary function.

{¶ 18} A court determines whether a function is governmental or proprietary by " ' "defining what it is that the political subdivision is actually doing when performing the function." ' " *Alcus v. Bainbridge Twp.*, 11th Dist. No. 2019-G-0205, 2020-Ohio-543, ¶ 70, quoting *Kenko Corp. v. Cincinnati*, 183 Ohio App.3d 583, 2009-Ohio-4189, ¶ 27 (1st Dist.), quoting *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, ¶ 41 (7th Dist.). In *Greene Cty. Agricultural Soc.*, the Supreme Court of Ohio rejected a broad characterization of a political subdivision's activities. That case arose when a county agricultural society filed suit against a hog exhibitor and others for allegedly violating the exhibition rules of a hog show held at a county fair. The defendants asserted a counterclaim, and the society responded by claiming political-subdivision immunity. When determining whether the society was engaged in a governmental or proprietary function, the Supreme Court stated that "the issue here is not whether holding a county fair is a governmental function; rather, it is the more specific question of whether conducting the hog show at the county fair and conducting the investigation into the allegations of irregularity surrounding the entry of [the winning hog] in that hog show are governmental functions." *Green Cty. Agricultural Soc.* at 560.

{¶ 19} Consequently, "[i]n determining whether a function is governmental or proprietary, courts look at the particular, specific activity that allegedly resulted in the

plaintiff's injury." *DSS Servs., L.L.C.*, 10th Dist. No. 18AP-567, 2019-Ohio-3158, at ¶ 18; *accord Cincinnati v. Rennick*, 1st Dist. No. C-210383, 2022-Ohio-1110, ¶ 9, quoting *Steele v. Cincinnati*, 1st Dist. No. C-180593, 2019-Ohio-4853, ¶ 20 (" 'The specific act or omission at issue must be considered, not just the general nature of the function.' "); *Alcus* at ¶ 73-75 (quoting and following *DSS Servs., L.L.C.*). Whether a function is governmental or proprietary may depend on the facts of the particular case. *DSS Servs., L.L.C.* at ¶ 18.

{¶ 20} In this case, the complaint alleges that, on April 17, 2023, Conie began replacing the fire hydrant. On that day, Conie excavated 15 feet down to expose the water line connected to the fire hydrant. Conie did not finish its replacement work on April 17, 2023. Conie "negligently failed to shore the [exposed water] line" before it left the job site on April 17, 2023. (Compl. at ¶ 12.) Consequently, that night, the water line burst, which caused water to flood Investment Group's apartment complex.

{¶ 21} Construing the factual allegations in the complaint in Investment Group's favor, we conclude that the specific negligent act that caused Investment Group's injury was Conie's failure to support the exposed water line. Although the complaint alleges that Conie excavated to the level of the water line in the process of replacing the fire hydrant, the complaint does not allege negligence involving the fire hydrant or Conie's work to replace the hydrant. Rather, the complaint seeks to hold the City liable for Conie's negligent failure to brace the water line after Conie had uncovered it.

{¶ 22} Maintaining a water line is a proprietary function under R.C. 2744.01(G)(2)(c). *Avila v. Cincinnati*, 182 Ohio App.3d 642, 2009-Ohio-2734, ¶ 15 (1st Dist.). Based on the allegations in the complaint, we conclude that the specific activity—or, rather, omission—that resulted in Investment Group's injury was Conie's failure to maintain the water line, a proprietary function. Consequently, the City has not demonstrated immunity on the basis that the complaint obviously or conclusively establishes that Conie's negligence occurred during its performance of a governmental function, thus precluding application of the R.C. 2744.02(B)(2) exception.

{¶ 23} The City next contends that it is immune because Conie is an independent contractor, not a City employee. As we stated above, under the R.C. 2744.02(B)(2) exception, political subdivisions are liable for the "negligent performance of acts by their employees." R.C. 2744.02(B)(2). The City argues that Investment Group cannot rely on

the R.C. 2744.02(B)(2) exception because allegations in the complaint establish that Conie was acting as the City's independent contractor, and not its employee, when Conie failed to shore the water line.

{¶ 24} As used in R.C. 2744.02(B)(2), "employee" means:

> [A]n officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's agent's, employee's, or servant's employment for a political subdivision. "Employee" does not include an independent contractor * * *.

R.C. 2744.01(B).  Thus, "employee" has a broad meaning that includes all agents unless the agent is an independent contractor.  *DSS Servs.*, *L.L.C.*, 10th Dist. No. 18AP-567, 2019-Ohio-3158, at ¶ 26.

{¶ 25} Because the term "independent contractor" is not defined in R.C. Chapter 2744, courts look to common law regarding employment and agency relationships for the test to distinguish between an independent contractor and employee.  *Reynolds v. Hamilton Cty. Dev. Disabilities Servs.*, 1st Dist. No. C-230046, 2024-Ohio-83, ¶ 25; *Trucco Constr. Co., Inc. v. Fremont*, 6th Dist. No. S-12-007, 2013-Ohio-415, ¶ 18.  Generally, the test for determining whether one is an independent contractor, rather than an employee, is whether the political subdivision retains the ability to control the work to be performed. *Reynolds* at ¶ 25; *Lakota v. Ashtabula*, 11th Dist. No. 2015-A-0010, 2015-Ohio-3413, ¶ 37; *Ponyicky v. Brunswick*, 9th Dist. No. 13CA0039-M, 2014-Ohio-3540, ¶ 11.

{¶ 26} The City does not point this court to any allegations in the complaint that specifically state that Conie was the City's independent contractor.  Instead, the City finds telling allegations that the City "contracted" and "hired" Conie.  (Compl. at ¶ 10, 19.)  As employers contract with and hire both employees and independent contractors, we do not find these allegations determinative of Conie's classification.

{¶ 27} Second, the City directs this court to the allegations that: (1) Jack Conie & Sons Corporation is the registered owner of the trade name "Conie Construction Company," and (2) Jack Conie & Sons Corporation, "by virtue of its ownership of [the trade name 'Conie Construction Company'], is responsible for the actions of [Conie Construction Company]."  *Id.* at ¶ 7.  The City contends that it could not exercise control over Conie's work because Jack Conie & Sons Corporation was responsible for the actions of Conie

Construction Company. Thus, the City argues, Conie acted as an independent contractor. This argument is nonsensical.

{¶ 28} A trade name is "a name used in business or trade to designate the business of the user and to which the user asserts a right to exclusive use." R.C. 1329.01(A)(1). Doing business under a trade name does not create a legal entity separate from the corporation but is merely descriptive of the corporation. *Wells Fargo Bank*, *NA v. WSW Franchising*, *Inc.*, 10th Dist. No. 09AP-26, 2009-Ohio-3845, ¶ 14. Here, the allegation in the complaint that Jack Conie & Sons Corporation bears "responsib[ility] for the actions" of Conie Construction Company merely recognizes the legal concept that Jack Conie & Sons Corporation and its trade name have the same liability as they are one legal entity. (Compl. at ¶ 7.) In short, Jack Conie & Sons Corporation and Conie Construction Company are one corporation, i.e., Conie.

{¶ 29} Importantly, the allegation at issue does not address whether the City or Conie exercised control over the work Conie performed on the job site. Consequently, the allegation does not obviously and conclusively establish that Conie was an independent contractor, and not an employee, of the City.

{¶ 30} In sum, no allegation in the complaint obviously or conclusively identifies Conie as an independent contractor. Absent such an allegation, the City cannot demonstrate that the R.C. 2744.02(B)(2) exception to immunity does not apply. The trial court, therefore, properly denied the City's motion to dismiss for failure to state a claim upon which relief can be granted.

{¶ 31} At this stage in the proceedings, for the City to obtain a dismissal, it must show that the complaint includes allegations that obviously or conclusively establish its entitlement to immunity. Given the allegations in the complaint, we cannot conclude that the City has met its burden with regard to the claims for negligence, interference with water rights, and private nuisance. The trial court, therefore, did not err in denying the City's motion to dismiss as to those claims. Accordingly, we overrule the City's assignment of error with regard to the claims for negligence, interference with water rights, and private nuisance. We, however, sustain the City's assignment of error with regard to the claim for trespass, for the reasons set forth in the discussion above.

## V. CONCLUSION

{¶ 32} For the foregoing reasons, we sustain in part and overrule in part the assignment of error, and we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas. We remand this matter to the trial court for further proceedings consistent with law and this decision.

*Judgment affirmed in part and reversed in part*;
*cause remanded.*

DORRIAN and EDELSTEIN, JJ., concur.

_____