## Capital Theatre Co. v. Compton.

(Decided Nov. 22, 1932.)

WALTER S. LAPP for appellant.
HERBERT MOORE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Bertha Helen Compton, an infant suing by her next friend, brought this action against the Capital Theatre Company of Louisville to recover damages for her wrongful expulsion. From a verdict and judgment in her favor for $200, defendant below has prayed an appeal.

The facts are these: Appellant conducts a neighborhood picture house in the city of Louisville. For the afternoon entertainment the admission fee is 20 cents for those over 12 years of age, and 10 cents for those under that age. On June 2, 1929, appellee lacked a few days of being 12 years of age, but had the appearance of being much older. On the afternoon of that day she and her younger sister went to the theater. According to appellee she purchased two tickets at 10 cents. Before that time complaint had been made to her mother, who accompanied her, that she was over 12 years of age, and her mother had replied that she was not. After purchasing the tickets she handed them to the man at the door. They kept yelling at her all the time that she was a little sneak, and could not get in on a 10 cent ticket. She was just going to sit down when one of the men came and jerked her by the arm and said, ''We want to see you back here.'' As they

went back he turned her over to the doorman, who said, "Young lady, I thought I told you before that you could not get in here on a 10 cent ticket." She said, "Yes, and I told you before that I was not but 11 years old." He then shoved the ticket at her, and told her to get out, and that, if she did not get out, he was going to call a policeman. She tried to talk to him, and asked if she could not get her little sister, but the doorman would not let her. She went outside and stood there about five minutes thinking her little sister would come out, but her sister did not come out and she went on home. It was raining at the time. On reaching home she cried so much that she had the headache and had to go to bed. The man who came down and grabbed her was Mr. Groves, the manager of the theater. He jerked her by the arm and told her to come back, that he wanted to see her. He took her by the arm and helped her to the aisle. She was not able to go to school the next day as she was no nervous. On cross-examination she stated that Mr. Groves had told her mother that she would have to buy a 20 cent ticket, and admitted that she got her money back. Charlotte Catherine Compton corroborated appellee, although there is some variation in the accounts of the transaction. Appellee's mother and a neighbor testified that appellee was nervous and upset when she reached home. On the other hand Sylvester Groves, president and general manager of the Capital Theatre, testified that he never saw appellee that he knew of before June 2, 1929. He was standing in the ticket office when the little girl (appellee's younger sister), came in and asked for two 10 cent tickets. He started down the aisle and said, "Sister, oh sister," and she went on. When she got to the third or fourth row from the front he tapped her on the shoulder and said, "You can't get in on a 10 cent ticket. You are over 12 years of age, and have to have an adult ticket." She got up and walked back. He walked behind her and said, "You should not try to sneak by the doorman like that. Buy your own ticket and hand the doorman your own ticket." He did not pull her, or push her, or do anything like that. In his judgment appellee looked like she did at the trial, and appeared to be 16 or 17 years of age. Appellee did not appear to be excited, nor did she cry. Appellee was calm enough to get her dime back.

The court gave the following instructions:

"If the jury believe from the evidence that the plaintiff, Bertha Helen Compton, personally purchased the ticket for her entrance to the defendant's theatre, at the time and place referred to in the evidence, it was the duty of the defendant, its agents, servants and employees, to permit her to remain in the defendant's theatre without molestation.

"If the jury believe from the evidence that said plaintiff did personally purchase said ticket as above set forth, and was thereafter compelled to leave said theatre, and was thereby unreasonably, unduly and wrongfully subjected to public ridicule, scandal, infamy or disgrace among her associates, or was thereby greatly humiliated and embarrassed and caused to suffer injurious criticism, or physical pain or mental anguish, then the law is for the plaintiff, and the jury should so find.

"2. If the jury believe from the evidence that the plaintiff had her younger sister to purchase her ticket for her entrance into defendant's theatre at the time and place referred to in the evidence, and that the said defendant, its agents, servants and employees thereafter discovered said deception, if any, and if the jury further believe that thereafter the defendant, its agents, servants and employees used no more force than was reasonably necessary to compel said plaintiff to leave its theatre, then in that event, the law is for the defendant and the jury should so find.

"But if the jury believe from the evidence that the plaintiff's younger sister purchased the ticket as above set forth, and defendants, its agents, servants and employees, after discovering said deception, if any, used greater force than was reasonably necessary to compel said plaintiff to leave its theatre, and the plaintiff suffered thereby as set forth in the first instruction, then the law is for the plaintiff and the jury will so find.

"3. If the jury find for the plaintiff they will award her such sum in damages as they may believe from the evidence will fairly and reasonably

compensate her for her physical and mental pain and suffering (if any or either) and for the humiliation, embarrassment, ridicule and injurious criticism, if any, which she suffered as a direct result of her said expulsion from said theatre, the award not to exceed $1,000.00, the amount claimed.

"4. If the jury find for the defendant, they will so say by their verdict and no more."

It will be observed that the court instructed the jury in substance that, if appellee purchased the ticket, she had the right to remain in the theater without molestation, and, if such was the case, her expulsion was wrongful, and she could recover for the humiliation, embarrassment, ridicule, and injurious criticism to which she was subjected, and that by another instruction the jury was told that, if the ticket was purchased by appellee's younger sister, and defendant, its agents, servants, and employees thereafter discovered the deception, if any, and used no more force than was reasonably necessary to compel appellee to leave, the jury should find for the defendant. These instructions do not conform to the law as uniformly declared by the courts. In the absence of some statutory regulation or restriction to the contrary, and we have none in this state, theaters, circuses, racetracks, private parks, and other places of amusement and entertainment stand on the same basis as any other private business, and are under the sole control of the proprietor or manager, who may admit or exclude whomsoever he chooses. Nor is the rule affected by the fact that the patron is the holder of a ticket. The ticket does not confer the right to enter or remain in the theater if the holder be not disorderly or otherwise objectionable. It is a mere license revocable at the will of the proprietor, or his agent, who may decline to permit the holder to enter, or remove him after he has taken his seat, and, unless the denial of admittance or the expulsion of the holder is accompanied by insult or the use of more force than is reasonably necessary to accomplish the purpose, the proprietor incurs no liability beyond the price of admission. 26 R. C. L. p. 710; Marrone v. Washington Jockey Club, 35 App. D. C. 82, affirmed in 227 U. S. 633, 33 S. Ct. 401, 57 L. Ed. 679, 43 L. R. A. (N. S.) 961; Finnesey v. Seattle Baseball Club, 122 Wash. 276, 210 pp. 679, 30 A. L. R. 948; Horney v. Nixon, 213 Pa. 20, 61 A. 1088, 1 L. R. A. (N. S.) 1184, 110 Am. St. Rep.

520, 5 Ann. Cas. 349; Weber-Stair Co. v. Fisher (Ky.) 119 S. W. 195; Powell v. Weber-Stair Co. (Ky.) 125 S. W. 255. From this it necessarily follows that mortification or humiliation resulting from the mere fact of the expulsion is not a proper element of damage. It follows that the instructions were erroneous.

But the point is made by appellee that, as appellant did not offer any instructions, it is not in a position to complain of the given instructions. That is not the law. Whenever the trial court instructs on the issues involved, it is its duty to give correct instructions. Here the given instructions are erroneous, and, where that is the case, a party may complain of the error without offering instructions on the same subject. Sackett v. Miniard, 219 Ky. 765, 294 S. W. 487.

Appellee testified that she was threatened with arrest. Appellant attempted to show that, in giving an account of the affair in her former deposition, she did not mention the arrest. The court held that this was no contradiction as appellee was not questioned about the arrest in her former deposition and excluded the evidence. In each instance she attempted to detail what occurred, and it was proper to show after she testified that she had been threatened with arrest, that she did not mention the arrest in her former deposition, subject, however, to the explanation that she was not questioned about the arrest, or any other explanation she might care to give.

Wherefore, the appeal is granted, and the judgment reversed and cause remanded for a new trial consistent with this opinion.