People v Watts (2018 NY Slip Op 07926)

People v Watts

2018 NY Slip Op 07926 [32 NY3d 358]

November 20, 2018

Fahey, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 13, 2019

[*1]

The People of the State of New York, Respondent,
v
Rodney Watts, Appellant.

Argued October 17, 2018; decided November 20, 2018

People v Watts, 148 AD3d 578, affirmed.

{**32 NY3d at 360} OPINION OF THE COURT

Fahey, J.

An event ticket, such as a concert or sports event ticket, affects a legal right, interest, obligation, or status within the meaning of Penal Law § 170.10 (1). This means that a defendant may be prosecuted under Penal Law § 170.25 for possession of counterfeit event tickets.
Defendant Rodney Watts, accused of selling counterfeit concert tickets, was charged by indictment with multiple counts of criminal possession of a forged instrument in the second degree (Penal Law § 170.25). A person is guilty of that crime "when, with knowledge that it is forged and with intent to defraud, deceive or injure another, [the person] utters or possesses any forged instrument of a kind specified in [Penal Law] section 170.10" (Penal Law § 170.25). Penal Law § 170.10, the second-degree forgery statute, specifies, as one type of forged instrument, "a written instrument which is or purports to be, or which is calculated to become or to represent if completed . . . [a] deed, will, codicil, contract, assignment, commercial instrument, credit card, . . . or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status" (Penal Law § 170.10 [1] [emphasis added]). We refer to the emphasized words as the statute's catchall clause.
Defendant moved to dismiss the indictment, noting that each count contained a "to wit" phrase charging him with possessing a forged instrument that purported to be "a ticket to a . . . concert." He contended that a counterfeit concert ticket falls outside the ambit of the second-degree forgery statute (and, therefore, the second-degree criminal possession of a forged instrument statute), on the ground that a concert ticket does not "affect a legal right, interest, obligation or status." Defendant also argued that the catchall clause must be read to contemplate only documents of [*2]the same character as a "deed, will, codicil, contract, assignment, commercial instrument, [or] credit card" (Penal Law § 170.10 [1]), and insisted that concert tickets are not of this nature.
Supreme Court denied defendant's motion, reasoning that a concert ticket does "affect a legal right, interest, obligation or status," within the meaning of the statute, because it "grants {**32 NY3d at 361}the holder the right to enter the venue and view the performance." Defendant could therefore be prosecuted under Penal Law § 170.25 for possession of a forged instrument purporting to be a concert ticket.
Defendant was subsequently arrested in possession of counterfeit sports event tickets. He was again charged by indictment and his motion to dismiss this indictment was also denied. Defendant ultimately pleaded guilty to two counts of criminal possession of a forged instrument in the second degree, in satisfaction of the indictments, resulting in two judgments of conviction and sentence.
On appeal from the judgments, defendant argued that the indictments are jurisdictionally defective for the same reason urged in his motions to dismiss. The Appellate Division rejected defendant's contention, holding that counterfeit event tickets are written instruments that purport to "affect a legal right, interest, obligation or status" under Penal Law § 170.10 (1) (148 AD3d 578 [1st Dept 2017]). A Judge of this Court granted defendant leave to appeal (30 NY3d 984 [2017]). We now affirm.
Defendant's argument, a jurisdictional challenge to the indictments against him, amounts to the claim that the otherwise valid statement of the elements of the crime in each count is negated by the specific allegation in the "to wit" phrase that the forged instrument purported to be an event ticket. He insists, in effect, that counterfeit event tickets could never fall within the ambit of the second-degree forgery statute. Defendant's rationale is that event tickets, the instruments that defendant's counterfeit documents purported to be, are merely revocable licenses and do not "affect a legal right, interest, obligation or status."
Defendant's premise that event tickets are revocable licenses is true. The case law saying as much is venerable. The purchase of an event admission ticket gives the holder "a revocable license . . . to enter the building in which [the event is held], and to attend the performance" (People ex rel. Burnham v Flynn, 189 NY 180, 185-186 [1907]; see also Collister v Hayman, 183 NY 250, 253 [1905]). An event ticket, in other words, is a permission slip, subject to retraction.
It does not follow, however, that an event ticket does not affect a legal right, i.e., "right created or recognized by law" (Black's Law Dictionary [10th ed 2014], legal right), or status,{**32 NY3d at 362} i.e., "legal condition, whether personal or proprietary" (Black's Law Dictionary [10th ed 2014], status). Indeed, the same decisions on which defendant relies to demonstrate the revocable nature of event tickets also describe the legal rights, albeit limited, that a ticket evidences or otherwise affects. An event ticket, the Court wrote, "is a license, issued by the proprietor . . . as convenient evidence of the right of the holder to admission" (Collister, 183 NY at 253 [emphasis added]). The legislature has similarly defined a ticket, in the context of entertainment and the arts generally, as "any evidence of the right of entry to any place of entertainment" (Arts and Cultural Affairs Law § 25.03 [9] [emphasis added]).
Furthermore, as defendant concedes, in certain circumstances, a ticket holder can recover the price of an event ticket in an action for breach of contract. This follows from the principle that the purchase of an event ticket "ma[kes] a contract" that "binds the person of the maker" so that the holder of a ticket who is wrongly ejected has the "right . . . to sue upon the contract for the breach" (Marrone v Washington Jockey Club, 227 US 633, 636 [1913]). Under general contract principles, a ticket holder, "being refused admission, is entitled to recover the amount paid for the ticket, and, undoubtedly, such necessary expenses as were incurred" (Burnham, 189 NY at 186). Moreover, a lawsuit based on discrimination or "indignant" public expulsion may yield damages (see generally Aaron v Ward, 203 NY 351 [1911]; 3 NY Jur 2d Amusements and Exhibitions § 2). It is clear that the possession of an event ticket affects an individual's legal rights and status and others' obligations.
Indeed, a license, even a revocable one, generally has considerable legal significance in that it gives the holder permission to do what would otherwise be a crime. It "grants the licensee a revocable . . . authority to do a particular act or series of acts upon another's land, which would amount to a trespass without such permission" (Ark Bryant Park Corp. v Bryant Park Restoration Corp., 285 AD2d 143, 150-151 [1st Dept 2001] [internal quotation marks and citations omitted]). In this manner, possession of a ticket affects the holder's "legal . . . status" (Penal Law § 170.10 [1]).
Of course, an event ticket or other revocable license does not give the holder an interest in real property (see Marrone, 227 US at 636). After enjoying a concert or sports event, a ticket-holder cannot insist on removing his seat and taking it home.{**32 NY3d at 363} Nevertheless, while it "neither gives nor implies a right in real property," a license "confers . . . [*3]the right to go onto or perform an act on the land of the licensor" (49 NY Jur 2d Easements and Licenses in Real Property § 213). In short, an event ticket evidences a revocable license to enter, which is a legal right and changes the holder's status. It follows that an event ticket is an instrument that "evidence[s] . . . or otherwise affect[s] a legal right, interest, obligation or status" (Penal Law § 170.10 [1]).
Defendant also argues that the forgery statute must be interpreted by means of the principle of ejusdem generis, the "[c]anon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed" (Black's Law Dictionary [10th ed 2014], ejusdem generis; see also McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b] [stating that the rule will not be applied if it would contradict the evident intent of the legislature]). We assume, without deciding, that ejusdem generis applies here. In other words, we assume that the terms "deed, will, codicil, contract, assignment, commercial instrument, credit card" (Penal Law § 170.10 [1]) denote concepts of a single kind or category, and that application of ejusdem generis would not contradict the legislature's clear intent. The catchall clause beginning with the words "other instrument" would then be interpreted to include only items of the same nature as "deed, will, codicil, contract, assignment, commercial instrument, credit card" (Penal Law § 170.10 [1]). Defendant suggests that the common factor is that the items are formal instruments "capable of conveying proprietary or monetary interests," the value of which is not "derived solely from physical possession of the actual instrument." He insists that, by contrast, an event ticket can generally be freely transferred from one person to the next, so that whoever lawfully possesses the ticket last is the person who receives the privilege.
A single example refutes defendant's theory. A bearer instrument, such as a blank traveler's check or a personal check made out to "cash," may be "negotiated simply by delivering the instrument to a transferee" (Black's Law Dictionary [10th ed 2014], bearer paper), just as an event ticket can be freely transferred from one person to the next. Its value is derived from physical possession. Yet a bearer instrument is a commercial instrument and hence part of the Penal Law § 170.10{**32 NY3d at 364}(1) list. Consequently, even if ejusdem generis is applied, defendant fails to demonstrate that an event ticket does not belong to the same general category as contracts, commercial instruments, credit cards, and the like. Instead, the ambit of "other instrument[s]" is simply the category of instruments defined by the statute as those that "[do] or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status" (Penal Law § 170.10 [1]). We have already concluded that event tickets fall within this category.
In rejecting defendant's interpretation, we note that the Appellate Division Departments that have addressed this issue have generally interpreted the catchall clause broadly, upholding its application to such disparate documents as a gift card (see People v Prince, 146 AD3d 491, 491 [1st Dept 2017]) and credit card sales receipts (see People v Morrison, 290 AD2d 808, 809-810 [3d Dept 2002]; People v Lewandowski, 255 AD2d 902, 902-903 [4th Dept 1998]). Other jurisdictions have applied the same interpretive approach to similarly worded statutes (see e.g. State v Dickman, 146 Conn App 17, 22-36, 75 A3d 780, 787-794 [2013] [medical records fall under "deed, will, codicil, contract, assignment, commercial instrument or other instrument which does or may . . . affect a legal right, interest, obligation or status" (Conn Gen Stat § 53a-139 [a] [1])]; Commonwealth v Ryan, 909 A2d 839, 844, 2006 PA Super 290 ¶ 15 [2006] [building permit included within "will, deed, contract, release, commercial instrument, or other document . . . affecting legal relations" (18 Pa Stat & Cons Stat Ann § 4101 [c])]; Commonwealth v Lenhoff, 796 A2d 338, 341, 2002 PA Super 89 ¶¶ 10-16 [2002] [gun purchase application included under same statutory language (18 Pa Stat & Cons Stat Ann § 4101 [c])]; Commonwealth v Sneddon, 738 A2d 1026, 1028, 1999 PA Super 238 ¶¶ 6-10 [1999] [cash register receipt qualifies under same statutory language (18 Pa Stat & Cons Stat Ann § 4101 [c])]). In short, "there is no absolute and finite list of instruments 'which [do] or may . . . affect a legal right, interest, obligation or status' " (Dickman, 146 Conn App at 30, 75 A3d at 791).
Finally, to the extent that defendant suggests that event tickets are not essential to the sustained functioning of New York's commercial and economic system and that it would be anomalous for the legislature to punish their counterfeiting as a felony, we disagree. The commercial significance of concert and sports event tickets in New York cannot be minimized. The state's cultural and sporting institutions play a very significant{**32 NY3d at 365} part in its economy, selling billions of dollars worth of tickets each season. New York City in particular plays host to numerous entertainment events that garner the attention of a global audience. Indeed, the legislature has expressly declared "that transactions involving tickets for admission to places of entertainment are a matter of public interest and subject to the supervision of New York and the appropriate political subdivisions of the state for the purpose of safeguarding the public against fraud, extortion, and similar abuses" (Arts and Cultural Affairs Law § 25.01).
[*4]
We have considered defendant's remaining contentions and conclude that they lack merit. We have no need to consider the People's remaining contentions.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge DiFiore and Judges Rivera, Stein, Garcia, Wilson and Feinman concur.
Order affirmed.