**[Cite as *Valentine v. Cedar Fair, L.P.*, Slip Opinion No. 2022-Ohio-3710, 2022-Ohio-3710.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2022-Ohio-3710**

**VALENTINE, APPELLEE, *v*. CEDAR FAIR, L.P., APPELLANT.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Valentine v. Cedar Fair, L.P.*, Slip Opinion No. 2022-Ohio-3710.]**

*Contract law—Property law—Breach of contract—Unjust enrichment—Revokable license—Season-pass holder received a revokable license to enter onto amusement-park property for park's 2020 season under stated terms and conditions in exchange for the consideration of the purchase price of the season pass—Park's owner was neither unjustly enriched nor in breach of contract with 2020 season-pass holder when it closed the park for two months in response to the government-mandated shutdown occasioned by the COVID-19 pandemic, because the season pass's terms and conditions provided that the amusement park could change its dates of operation without advance notice and close rides and attractions "for weather or other conditions," including the government-mandated shutdown—Season-*

*pass holder received the benefit of her bargain—Court of appeals' judgment reversed and trial court judgment reinstated.*

(No. 2021-0981—Submitted May 25, 2022—Decided October 20, 2022.)

APPEAL from the Court of Appeals for Erie County,

No. E-20-018, 2021-Ohio-2144.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from a judgment of the Sixth District Court of Appeals, we consider breach-of-contract and unjust-enrichment claims brought by appellee, Laura Valentine, seeking to recover damages as a season-pass holder for the delayed opening of an amusement park owned by appellant, Cedar Fair, L.P. The delayed opening was caused by the government-mandated shutdown imposed by the state of Ohio in response to the COVID-19 pandemic.

{¶ 2} Valentine asserts that Cedar Fair breached the terms and conditions of the season pass that it issued for the 2020 season and that it was unjustly enriched when it failed to open its amusement parks in May and June 2020. The Erie County Court of Common Pleas dismissed her complaint for failure to state a claim upon which relief can be granted, but the Sixth District reversed, holding that Valentine's action could proceed because the terms and conditions of the Gold Pass, the season pass that Valentine had purchased, were ambiguous and therefore presented a question for the trier of fact.

{¶ 3} A season pass grants the holder a revocable license to enter an event or attraction according to its terms and conditions. Here, by selling Valentine a season pass for admission to Cedar Point Amusement Park in Erie County, Ohio, Cedar Fair agreed to admit Valentine to that park for her to access "all open rides * * *, shows and attractions on any regularly-scheduled operating day of the season." However, it expressly reserved the right to change its operating dates without notice and to close its rides and attractions "for weather and other

conditions." In March 2020, the state government ordered a shutdown of amusement parks in response to the COVID-19 pandemic. Cedar Fair opened Cedar Point to season-pass holders in July 2020, after the government-mandated shutdown was lifted. We conclude that Cedar Fair's delay in opening its parks to season-pass holders does not, by itself, establish a claim for breach of contract or for unjust enrichment.

{¶ 4} For these reasons, we reverse the judgment of the Sixth District and reinstate the judgment of the trial court.

### Facts and Procedural Background

{¶ 5} According to the complaint filed in this case, Valentine purchased a 2020 season pass from Cedar Fair for use at Cedar Point. She alleged that the parties intended for the season pass to be valid for admission from "at least May 2020 through October 2020." After Valentine purchased the season pass, Cedar Fair announced that its parks were closed due to the COVID-19 pandemic.

{¶ 6} Valentine brought this action on behalf of herself and similarly situated persons who purchased a 2020 season pass to Cedar Fair's parks, alleging that Cedar Fair breached the contractual duties set forth in the passes' terms and conditions, which were available on the website where customers purchased their season passes. In the alternative, she alleged that Cedar Fair had been unjustly enriched by selling season passes that it did not honor, and she sought recovery for money had and received by Cedar Fair.

{¶ 7} Cedar Fair moved to dismiss the complaint for failure to state a claim upon which relief can be granted. It pointed out that the complaint incorporated by reference the terms and conditions of the Gold Pass that Valentine had purchased and that those terms stated that the season pass was a revokable license that allowed the holder admission to Cedar Point and use of all open rides and attractions on regularly scheduled operating days. Those terms also provided as follows: "All operating dates and hours are subject to change without notice. All rides and

attractions are subject to closings and cancellations for weather or other conditions. * * * A Gold Pass is the property of Cedar Fair L.P. and is non-transferable, non-refundable, non-exchangeable and not valid for cash." Cedar Fair further contended that Valentine's equitable claims for unjust enrichment and for money had and received failed because there was a valid and enforceable agreement between the parties.

{¶ 8} In response, Valentine maintained that when a licensor revokes a purchased ticket due to no fault of the licensee, a refund of the ticket price is required. She noted that the season pass's terms provided that the pass could be revoked without a refund only for cause. Valentine asserted that she fully performed under the contract and that when Ohio's government-mandated shutdown made Cedar Fair's performance impossible, she was entitled to restitution. She explained that if Cedar Fair was not contractually obligated to open Cedar Point in May 2020, then no contract was formed, because there was no mutuality of obligation. Either way, she argued, she and the class she represented were entitled to a refund.

{¶ 9} The trial court found that the season pass was a revocable license that granted Valentine a privilege to enter onto Cedar Fair's property without granting her any interest in that property. It explained that as a licensee, Valentine had no right to the continued existence of the license, which could be revoked without compensation. Rather, the court explained, she had purchased only the right to enter onto Cedar Fair's property pursuant to the season pass's terms and conditions, which had been incorporated in the complaint by reference. The trial court noted that Valentine had not alleged that the season pass had been revoked or that she had been denied a refund, and that the pass's terms and conditions did not include a specific date for opening day or set forth specific dates of operation. Because the terms and conditions permitted Cedar Fair to modify the operating dates for Cedar Point, the court decided that Cedar Fair did not violate the season pass's terms and

conditions by changing the opening day as a result of the COVID-19 pandemic. The court took judicial notice of the fact that Cedar Point opened for the 2020 season on July 9, 2020, and that Valentine had consequently received the benefit of her bargain. The trial court therefore dismissed the complaint with prejudice.

{¶ 10} The Sixth District reversed. It agreed that the season pass was a revocable license, but it concluded that Cedar Fair had entered into a contract with Valentine when it sold her the pass. The court of appeals therefore found that the parties were subject to the terms and conditions of the pass and that Cedar Fair could not simply revoke the season pass at will and without compensating the season-pass holder. 2021-Ohio-2144, 174 N.E.3d 300, ¶ 59-60. The court of appeals stated: "[I]t is apparent here that 'season' holds special meaning in the context of the operation of an amusement park located in Northern Ohio, where the weather is not conducive to its year-round operation." *Id*. at ¶ 48. It explained that "the trial court was obligated to accept as true Valentine's allegation that Cedar Point's 'season' runs from May to October," *id.* at ¶ 49, because ambiguity in the meaning of the word "season" had to be resolved by a trier of fact in order to interpret the agreement, *id*. And the court of appeals held that "[d]espite the fact that a contractual relationship existed that was governed by the Gold Pass Terms and Conditions, Valentine properly pled the alternative claims of unjust enrichment and money had and received." *Id.* at ¶ 59.

{¶ 11} Cedar Fair appealed, and we accepted jurisdiction over three propositions of law:

I. A revocable license grants its holder access to property pursuant to the terms of the license. A revocable license does not impose contractual obligations on the grantor of the license to open its business in violation of government shut down orders or be liable for damages for failing to do so.

II. Terms in a written instrument are to be given their plain and ordinary meaning. The term "Season" is not ambiguous and should be afforded its plain meaning.

III. Where there is a written agreement between the parties, a quasi-contractual claim based upon the same written agreement cannot exist.

*See* 165 Ohio St.3d 1449, 2021-Ohio-3908, 175 N.E.3d 1286.

### Standard of Review

{¶ 12} We review de novo a decision granting a motion to dismiss under Civ.R. 12(B)(6). *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 10. In conducting this review, we accept as true the factual allegations in the complaint. *Id.* "[T]hose allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. To grant a motion to dismiss, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Id.*

### Law and Analysis

{¶ 13} "A common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property." *United States v. Craft*, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). These rights include the right to use the property, to receive income produced by it, to exclude others from it, to dispose of it, *id.* at 283-284, and to include others in the use, possession, or enjoyment of it, Kelly, *The Right to Include*, 63 Emory L.J. 857, 885 (2013). In property law, when a landowner gives another person permission to do something on his or her property without granting that person any estate in the property, that permission is called a license. *Mosher v. Cook United,*

*Inc.*, 62 Ohio St.2d 316, 317, 405 N.E.2d 720 (1980); 3 Tiffany, *Real Property*, Section 829 (3d Ed.2021).

{¶ 14} An admission ticket to an event or attraction is a license, and that license is generally revocable at the will of the landowner. *See Marrone v. Washington Jockey Club*, 227 U.S. 633, 636, 33 S.Ct. 401, 57 L.Ed. 679 (1913); *Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1326 (11th Cir.2008), fn. 7; *People v. Watts*, 32 N.Y.3d 358, 361, 116 N.E.3d 60, 91 N.Y.S.3d 769 (2018); *Ladd v. Uecker*, 323 Wis.2d 798, 2010 WI App 28, 780 N.W.2d 216, ¶ 16; *Sweeney v. United Artists Theater Circuit, Inc.*, 119 P.3d 538, 540 (Colo.App.2005); *Yarde Metals, Inc. v. New England Patriots Ltd. Partnership*, 64 Mass.App.Ct. 656, 658, 834 N.E.2d 1233 (2005); *Capital Theatre Co. v. Compton*, 246 Ky. 130, 134, 54 S.W.2d 620 (1932); *Finnesey v. Seattle Baseball Club, Inc.*, 122 Wash. 276, 281, 210 P. 679 (1922); *Boswell v. Barnum & Bailey*, 135 Tenn. 35, 38, 185 S.W. 692 (1916); 3 Tiffany, Section 829; Bruce and Ely, *The Law of Easements & Licenses in Land*, Section 11:6 (2022). A ticket to an event or attraction may be given gratuitously or it may be given as consideration for a contract. *See Marrone* at 636; *Watts* at 362; *Scott v. Young*, 421 F.2d 143, 145 (4th Cir.1970); 3 Tiffany, Section 833. Further, permission to enter onto the land may be limited by written and unwritten terms and conditions. *See Mosher* at 318 (explaining that a store could exclude a patron for writing down its prices); *Scales v. Six Flags, Inc.*, 11th Dist. Portage No. 2003-P-0043, 2004-Ohio-4385, ¶ 20 (noting that rights of a season-pass holder were limited by pass's terms and conditions); *Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111, 1116 (Ind.2010) (explaining that a casino could exclude a blackjack player for counting cards).

{¶ 15} The season pass that Valentine purchased is no exception. She obtained a revocable license to enter Cedar Point in consideration for the purchase price of the season pass. Her admission to Cedar Point was made expressly subject to the stated terms and conditions of the season pass, which provided: "A Cedar

Fair L.P. Gold Pass * * * grants a revocable license to the registered holder for admission and use of all open rides * * *, shows and attractions on any regularly-scheduled operating day of the season." According to the pass's terms and conditions, Valentine agreed to these and other conditions by purchasing a season pass.

{¶ 16} The crux of Valentine's claim is that this language created a contractual right, allowing her and other season-pass holders to be admitted for the 2020 season, that that season runs from May through October each year, and that Cedar Fair breached this term by failing to open Cedar Point in May and June 2020. The court of appeals concluded that Valentine stated a claim for relief because the meaning of the word "season" was ambiguous and that the trial court was required to assume the truth of Valentine's assertion that the season runs from May through October.

{¶ 17} But even if we assume it is true that Cedar Fair's season regularly runs from May through October, that would not mean that Cedar Fair was contractually bound to open its parks in May 2020. Again, the terms and conditions provided: "All operating dates and hours are subject to change without notice. All rides are subject to closings and cancellations for weather or other conditions." Cedar Fair therefore reserved the right to adjust its dates of operation for any reason, and there is no question that Ohio's government-mandated shutdown during the COVID-19 pandemic was a condition that required Cedar Fair to close its parks for approximately two months.

{¶ 18} The trial court took judicial notice of the fact that Cedar Point did open for the 2020 season—an action that Valentine has not challenged. Therefore, this is not a case involving the complete failure of consideration (i.e., Cedar Fair did not fail to open at all for the season), but rather, at most, this case concerns the sufficiency of the consideration exchanged for the purchase price of a 2020 season pass. However, the established rule is that "courts may not inquire into the

adequacy of consideration, which is left to the parties as 'the sole judges of the benefits or advantages to be derived from their contracts.' " *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17, quoting *Newhall v. Paige*, 76 Mass. 366, 368 (1858). And although we recognize that Valentine was entitled to plead alternative theories of relief, *see* Civ.R. 18(A), " '[a] person is not entitled to compensation on the ground of unjust enrichment if [that person] received from the other that which it was agreed between them the other should give in return,' " *Ullmann v. May*, 147 Ohio St. 468, 478, 72 N.E.2d 63 (1947), quoting Restatement of the Law 1st, Restitution, Section 107, Comment a (1937). Here, Valentine received the benefit of her bargain, even if the 2020 season was shorter than she had expected it would be when she purchased the season pass.

### Conclusion

{¶ 19} The government-mandated shutdown resulting from the COVID-19 pandemic disrupted the daily lives and businesses of Ohioans statewide. Among those disruptions was the delayed opening of Cedar Point. Nonetheless, this case requires us to apply the terms and conditions that Valentine agreed to when she purchased a 2020 season pass from Cedar Fair. And according to those terms, Cedar Fair could change its dates of operation without advance notice and close rides and attractions "for weather or other conditions," including the government-mandated shutdown. Valentine's breach-of-contract action therefore fails as a matter of law, and she cannot sue for unjust enrichment when Cedar Fair abided by the terms of its agreement with her.

{¶ 20} Consequently, we reverse the judgment of the Sixth District Court of Appeals and reinstate the judgment of the trial court.

Judgment reversed
and trial-court judgment reinstated.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Dworken & Bernstein Co., L.P.A., and Nicole T. Fiorelli, Patrick J. Perotti, and Frank A. Bartela, for appellee.

Reminger Co., L.P.A., and Justin D. Harris, David R. Hudson, Taylor C. Knight, and Brian D. Sullivan, for appellant.

_____